[Crim. No. 11890. Second Dist., Div. Four. Oct. 11, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. RALPH VILLALOBOS, Defendant and Appellant.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Richard H. Levin, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow, and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

KINGSLEY, J. — Defendant, together with Freddie E. Morales and Clyde Olivas, was charged with the possession of marijuana, in violation of section 11530 of the Health and Safety Code. Trial by jury was duly waived and the case was submitted on the transcript of the testimony taken at the preliminary examination together with the exhibits there introduced. The court found all three defendants guilty as

charged; defendant was committed to the Youth Authority, from which judgment he has appealed.

Officer Weese, of the Los Angeles Police Department, was advised by the manager of the Ramona Gardens housing project that a number of marijuana smokers were in the habit of congregating on a street adjacent to the project. He drove to the location indicated and saw a group of 10 men crouched in a huddle. As he approached them, a torn paper sack was thrown into the air and the men scattered. The officer did not see who threw the sack and he was unable to say that any particular member of the group was in immediate physical possession of the sack prior to the throwing.

The officer recognized four of the men and he pursued two others whom he did not recognize. He apprehended one of these two (Tony Osuna—not involved in the present case), handcuffed him, and then returned to pick up the paper sack. Examination of its contents (a brownish, green leafy substance) convinced him, in the light of his experience and training, that the sack contained marijuana.[1] He then started to search for the other men in the group. Defendant and his codefendants were found seated on a bench about 150 feet from the point at which the huddled group had been. The officer recognized them as three members of that group.[2] He "approached them, and questioned them,[3] and placed them under arrest." They were transported to the narcotics division quarters and were there searched. Some debris was taken from defendant's pocket, which debris, on being tested, was discovered to consist of 50 milligrams of marijuana debris.

The contentions made by counsel for defendant at the preliminary examination, and here, were (1) that the arrest was without probable cause and (2) that the evidence is not sufficient to support the finding of guilt.

It is admitted that the officer had adequate grounds to interrogate defendant and his companions and to investigate their possible connection with marijuana usage. He had information from a reliable informant[4] that such usage habitually

---

[1] When examined by the police chemist, the sack proved to contain 3 grams of marijuana.

[2] The record does not disclose whether or not defendant, or either of his codefendants, was among the four men whom Officer Weese had recognized as he approached the group.

[3] No attempt was made to introduce the conversation that preceded the arrest and it is not contended that anything said by defendant or his companions was relied on by the officer as giving him grounds for the arrest.

[4] Cf. *People* v. *Lewis* (1966) 240 Cal.App.2d 546 [49 Cal.Rptr. 579].

took place at the point where defendant and his companions were first seen. ▮ While mere flight at the approach of an officer is not, itself, ground for arrest (*People* v. *Garrett* (1965) 237 Cal.App.2d 701 [47 Cal.Rptr. 194]), it justified the officer in investigating to discover the reason for the flight. ▮ Knowing, as he did when he approached the defendant and his companions, that someone among the group of 10 had possessed a sack of marijuana, inquiry of the three to discover more about that possession and the activity of the group was not only proper but an obligatory police duty.

Defendant's argument is that, since the officer (so far as this record shows) had no basis for thinking that defendant had held the sack or thrown it, there was no justification for him to go beyond interrogation and no reasonable basis for the arrest. ▮ But the law recognizes a joint possession; the officer could reasonably conclude that the sack was the common property—or at least in the common possession—of the entire group of 10 men. We conclude that he had reasonable cause to arrest any or all members of the group.

Were there no more to the case, what we have said would also dispose of the contention that the evidence was insufficient. (*People* v. *Toms* (1958) 163 Cal.App.2d 123, 128 [329 P.2d 90].) However, when the case was heard at the preliminary examination, the magistrate took the position that defendant could not be convicted of possession of the marijuana in the sack, since he was not shown to have been more than a spectator or hanger-on. He expressly admitted the sack and its contents "only as part of the probable cause phase of the case" and expressly refused to admit it as evidence against defendant. As we have indicated, the case was submitted to the trial court solely on the transcript of the preliminary examination and on "all exhibits received at the preliminary hearing." It does not appear from the record of the trial that anyone considered the sack and its contents to have been in evidence at the trial on the issue of guilt.

The Attorney General argues:[5]

---

[5]Citing section 1252 of the Penal Code, and language in *People* v. *Ditson* (1962) 57 Cal.2d 415, 431 [20 Cal.Rptr. 165, 369 P.2d 714], the Attorney General suggests that we could, on this appeal, review the ruling which limited the admission of the sack. But the section cited, and the *Ditson* case, involved rulings by the trial court; here the exclusion was by the magistrate and the exhibit was never offered in evidence at the trial, so that that court had no opportunity to rule on its admissibility and, of course, never did so. It follows that, whatever the effect of section 1252 in a proper case, it affords no help to the People in the case at bench.

(a) Since the officer's testimony that he found and examined the sack and contents, and the expert's testimony as to the nature and quantity of the contents, were admitted without objection and without limitation as to purpose, the physical exhibit was purely cumulative and its limited admission immaterial.

(b) The debris found in defendant's pocket was, itself, sufficient to sustain the conviction.

I

The first of these contentions is correct as far as it goes. While it is customary to introduce the narcotics discovered, it is not legally necessary so to do. Evidence sufficient to show the narcotic nature of the substance found, and to connect the expert analysis with the things which the officer discovered, is all that the law requires. (*People* v. *Munoz* (1961) 198 Cal.App.2d 649, 652-653 [18 Cal.Rptr. 82] ; *People* v. *Coleman* (1950) 100 Cal.App.2d 797, 801-802 [224 P.2d 837].) As was said in the *Coleman* case (at page 802) :

"Nor is the failure to offer the bottle and contents in evidence important. The jury could not tell by looking at the powder whether or not it was heroin. Introducing it in evidence would have assisted the jury in no way. Strictly speaking, the bottle need not have been produced at the trial. Where a witness testifies that he found a bottle containing a white powder, and a chemist says that powder, on analysis, proves to be heroin, there is no requirement that the bottle or powder be produced, at least in the absence of a demand by the defendant."

Since the trial court, of course, was not obligated to make the same rulings on evidence as the magistrate had made, it follows that, had the sack and its contents been re-offered at the trial, the trial court could have admitted them. And since the trial court, also, was not bound to take the same view of the testimony admitted at the preliminary examination as that taken by the magistrate, it follows, too, that it could have found, on that admitted evidence, and without receiving the sack and its contents, that the defendant was in common possession of the substantial quantity of marijuana in the sack. (*People* v. *Toms, supra,* (1958) 163 Cal.App.2d 123.)

But no such finding appears in the record, even by implication. The entire expression by the trial court appears in the following portion of the brief procedure when defendant was found guilty:

"The Court: In this case the Court has read and considered

the Reporter's Transcript of Preliminary Examination on July 8, 1965.

"Is there anything further to submit?

"MR. RAPPAPORT: No, your Honor.

"MR. FEIFER: The People have nothing further. The People rest.

"MR. RAPPAPORT: Defendants rest, your Honor.

"MR. FEIFER: People waive opening argument.

"THE COURT: Do you wish to be heard, Mr. Rappaport?

"(Argument by counsel.)

"THE COURT: Is there anything further, counsel?

"MR. RAPPAPORT: No, your Honor, we will submit it.

"MR. FEIFER: No, your Honor. I do agree that the amounts are very small, and the People do submit it.

"THE COURT: The amounts are small, but that doesn't change the aspect of the case at all as to guilt or innocence. The Court finds all defendants guilty as charged."

We think it clear that neither counsel, nor the court, had in mind the possibility of basing conviction on an inference that defendant had possessed the marijuana in the sack. Clearly, he was convicted on the basis of the marijuana debris in his pocket and of no other possession. And, since the inference of common possession, while permissible on this record, was not inevitable, we cannot sustain a conviction on the theory that the trial court might have drawn the inference for which the Attorney General now contends.

II

We turn, then, to consider the second contention above set forth—namely that possession of the debris was, itself, sufficient to sustain the conviction. In *People* v. *Leal* (1966) 64 Cal.2d 504, 511-512 [50 Cal.Rptr. 777, 413 P.2d 665], the Supreme Court, after reviewing a series of earlier cases including our decision in *People* v. *Aguilar* (1963) 223 Cal. App.2d 119 [35 Cal.Rptr. 516], and the decision in *People* v. *Sullivan* (1965) 234 Cal.App.2d 562 [44 Cal.Rptr. 524], concluded that:

". . . the statutory differentiation of the various crimes as well as the history of the cases culminating in *Sullivan* show that in penalizing a person who possesses a narcotic the Legislature proscribed possession of a substance that has a narcotic potential; it condemned the commodity that could be used as such. It did not refer to *useless* traces or residue of such substance. . . . Since in the present case the prosecution proved no more than defendant's possession of traces of narcotics and did not show that such residue was usable for

sale or consumption, we remit it to the trial court for the purpose of ascertaining whether or not such factual elements were present.'' (Italics in original.)

In argument before us, the Attorney General pointed out that *Leal,* and *People* v. *McCarthy* (1966) 64 Cal.2d 513, 514 [50 Cal.Rptr. 783, 413 P.2d 671], decided the same day, involved heroin and he suggests that the same rule is not applicable to a prosecution for possession of marijuana. Not only does this argument overlook the fact that one of the cases relied on in *Leal—People* v. *Cole* (1952) 113 Cal.App.2d 253 [248 P.2d 141]—did involve marijuana, but the reasoning of *Leal* is so clearly applicable to all kinds of narcotics that we reject the suggestion that its doctrine is not applicable here.

Logically, the debris found in defendant's pocket could give rise to an inference that there had been, in that pocket, within a reasonable period of time, a greater quantity of marijuana. In ordinary life, such debris gets into a pocket only because it has fallen from, or been rubbed off, a greater and usable quantity. And, unlike a crystalized residue of heroin found on a spoon where the history of the spoon is uncertain, an inference that this earlier possession was that of the coat's owner is likewise permissible. But we cannot rely on such a theory here. In *People* v. *McCarthy, supra,* (1966) 64 Cal.2d 513, defendant had admitted ownership of a small quantity of wet cotton in which traces of heroin were found, and his arms gave evidence of the use of heroin within less than a day. Clearly, the same inference—that, within the time it took cotton to dry, he had possessed enough heroin for an injection—was possible there. But the Supreme Court neither drew such an inference, nor did it include such an issue as one to be considered on remand. Under these circumstances, we cannot rely on a similar inference here. The case must rest, as the trial court obviously considered it to rest, on the possession only of the debris actually found in defendant's pocket.

 Assuming that, at some point, a trial court and we could take judicial notice that a given quantity of narcotic, or a narcotic in a certain condition of packaging (as, for example, a marijuana cigarette), was usable, the 50 milligrams herein involved, scraped from a pocket, does not reach that status. If, in fact, it was a usable quantity, the burden was on the prosecution to prove that fact. Understandably, no such attempt was here made[6] and the remarks above quoted

---

[6]The case at bench was tried on September 23, 1965; *People* v. *Leal* was not decided until May 2, 1966.

make it clear that that issue had not occurred to the trial court as a matter calling for its factual determination. Because of this deficiency in proof, the case must be remanded for a new trial.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.