[Crim. No. 4159. Fourth Dist., Div. Two. Dec. 29, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY JOSEPH VALERIO, Defendant and Appellant.

**COUNSEL**

Goodman, Hirschberg & King and Max A. Goodman for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Edward T. Fogel, Jr., Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**KAUFMAN, J.**—Defendant Gregory Valerio and a codefendant, Debra Snipes, his sister-in-law, were charged and convicted by a jury of unlawful possession of marijuana (Health & Saf. Code, § 11530) and unlawful transportation of marijuana (Health & Saf. Code, § 11531). The jury also found it true that a motor vehicle was involved in or used incidental to the

commission of the offenses charged in the information. Defendant appeals from the judgment entered on these verdicts.[1]

## The Facts

At or about noon on October 14, 1969, Officer Paul Bowles of the Anaheim Police Department observed that when defendant's car stopped at an intersection, its brake lights were not working properly. When the signal changed, Officer Bowles turned on his red light to pull over defendant's car. The car first slowed to about 30 miles per hour but continued in the driving lane. Then it slowed to between 10 and 15 miles per hour and started pulling toward the curb. The automobile could have stopped at any point along the curb, but did not stop as soon as it might have. As the vehicle was slowing, the officer noted the woman codefendant, sitting on the passenger side, reach down to the floorboard, then straighten up and throw a cigarette out the window. The officer visually pinpointed the spot where the cigarette landed. The car finally stopped about 400 feet from the point where the officer activated his red light. It had traveled some 200 feet along the curb at the reduced speed.

When the car did come to a stop, the defendant immediately got out and walked back toward the police car; the officer met him about halfway and asked him to go back and sit down in his car. Officer Bowles then asked Debra Snipes, the codefendant, what kind of cigarettes she smoked. She denied smoking at all, and the defendant volunteered that he did not smoke either.

The officer then walked back to the place at which he saw the cigarette land. There he found a hand-rolled, partially smoked, cigarette approximately 1½ inches long with one end twisted. By examining and smelling this partial cigarette, which was not warm to the touch, Officer Bowles, based upon his past experience as a police officer, formed the opinion that it was marijuana. He went back to the car and advised both occupants that they were under arrest for possession of marijuana.

The defendant was searched and handcuffed. As he was being put in the police car, Valerio asked the officer if he was going to search Debra Snipes. The officer answered no, and did not search Miss Snipes, but did ask her why she was protruding in front. She answered that she was pregnant.

Officer Bowles then searched the car. In the nap of the rug on the driver's

[1]Defendant was sentenced to state prison for the term prescribed by law pursuant to section 1202b of the Penal Code (defendant under the age of 23 years). A stay of execution was ordered as to the sentence for the offense of unlawful transportation.

side, both front and rear, he discovered a small quantity of marijuana fragments. No fragments were found on the passenger side of the vehicle.

When the codefendant was taken to the police station and a search of her person began, she pulled two bags of marijuana from her stomach area and gave them to a matron, stating that she was not pregnant as she had previously stated.

There was testimony that the fragments, the partially smoked cigarette and the bags of marijuana together constituted a usable amount, but there was no testimony as to whether the fragments themselves or the partially smoked cigarette itself constituted a usable quantity of marijuana. In the absence of such testimony, it may not be inferred that the fragments constituted a usable quantity (*People* v. *Leal,* 64 Cal.2d 504, 512 [50 Cal. Rptr. 777, 413 P.2d 665]; *People* v. *Villalobos,* 245 Cal.App.2d 561, 567 [54 Cal.Rptr. 60]), but, inasmuch as the marijuana cigarette was only partially smoked and the remaining portion was approximately 1½ inches long, it may be inferred that it constituted a usable quantity (*People* v. *Locke,* 274 Cal.App.2d 541, 544 [79 Cal.Rptr. 367]; *People* v. *Villalobos, supra.*)

On this state of the evidence, the People rested, and defendant reserved a motion for acquittal under Penal Code, section 1118.1.[2] The motion was actually made, argued and denied at the conclusion of all the evidence, but was deemed made at the close of the prosecution's case.

The codefendant testified in her own defense that she met the appellant at a friend's house in the morning and got a ride home with him. On the way, she testified that they stopped at a house where the appellant bought the two bags of marijuana. She carried them in her purse to the car, then put them on the floorboard in front of her. When the police car's light came on, appellant told her to hide the bags, and produced a cigarette which he told her to throw away.

Appellant, testifying in his own defense, denied both that they stopped at a house after leaving their friends, and that he handed the cigarette to his sister-in-law. Rather, he testified that she produced it and asked what to do with it, and then threw it out the window before he could answer.

---

[2]Penal Code, section 1118.1 provides: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

*Contentions*

Defendant makes the following contentions:

(1) That the court erred in failing to grant his motion for acquittal under Penal Code, section 1118.1;

(2) That he was convicted on the uncorroborated testimony of an accomplice;

(3) That the court erred in refusing to give a requested instruction that the woman codefendant was an accomplice as a matter of law;

(4) That the court erred in failing to give *sua sponte* an instruction defining an accomplice.

*The Motion for Acquittal*

Under section 1118.1 the court "shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." ▮ The test to be applied by the trial court under the section is, therefore, the same test applied by an appellate court in reviewing a conviction: whether from the evidence, including reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged (*People* v. *Groom,* 60 Cal.2d 694, 696-697 [36 Cal.Rptr. 327, 388 P.2d 359]; *People* v. *Redrick,* 55 Cal.2d 282 [10 Cal.Rptr. 823, 359 P.2d 255].)

We shall be called upon hereinafter to deal more specifically with the elements of the two offenses charged. It is apparent, however, that if the testimony of the woman codefendant may be considered, there was ample evidence to support a conviction of defendant for both possession and transportation of marijuana. ▮ We are met at the outset, therefore, with the question whether, in reviewing this alleged error and its possible prejudicial effect, we must confine ourselves to the evidence before the trial court at the time the prosecution rested or whether we may consider the evidence thereafter presented.

Although defendant's motion was actually presented and argued after all of the evidence was in, it was previously reserved and by permission of the trial court was deemed made at the close of the prosecution's case. It would appear reasonable, therefore, to relate the denial of the motion back to that time also. Penal Code, section 1118.1 providing for a motion for acquittal was enacted by the Legislature in 1967 replacing former section 1118 which provided for a nonbinding directed verdict. The new

enactment is substantially similar to subdivision (a) of rule 29 of the Federal Rules of Criminal Procedure. Under the federal practice, the majority of decisions hold that, if after the motion is denied, the defendant puts on evidence which supplies any deficiency in the prosecution's case, he may not complain on appeal of the erroneous denial of his motion. (*Cephus* v. *United States,* 324 F.2d 893, 896; see also 8 Moore's Federal Practice, 2d ed., ¶¶ 29.03 and 29.05.) In so holding, the cases generally theorize that the defendant "waived" the error or is estopped to assert it or, in some cases, that the error cannot be considered prejudicial. (See 8 Moore's Federal Practice, *supra;* Phillips, Comment, *The Motion for Acquittal: A Neglected Safeguard,* 70 Yale L. J. 1151, 1160-1163.) The "waiver" rationale has been severely criticized (see *Cephus* v. *United States, supra,* 324 F.2d at pp. 896-897; but see 8 Moore's Federal Practice, *supra,* ¶ 29.05, text opposite fns. 16 through 18), and the California decisions under the directed verdict procedure prior to 1967, while not controlling, appear inconclusive and somewhat in conflict (see *People* v. *Clark,* 62 Cal.2d 870, 881 [44 Cal.Rptr. 784, 402 P.2d 856]; but cf. *People* v. *Coleman,* 100 Cal.App.2d 797, 803 [224 P.2d 837]; *People* v. *Crane,* 34 Cal. App. 760, 762-765 [168 P. 1055]).

Whatever may be the appropriate rule generally, the case at bench presents a fact situation in relation to this problem substantially the same as that in *Cephus* v. *United States, supra,* 324 F.2d 893. The testimony helpful to the prosecution which came in after the denial of the motion (remembering that the motion was deemed made and is deemed denied at the conclusion of the prosecution's case) was given by the woman codefendant. Defendant's testimony did not materially assist the prosecution's case against him. The thrust of his testimony was that the codefendant alone was guilty in contradiction of the codefendant's testimony to the effect that defendant was guilty. The court in *Cephus* concluded that, under such circumstances, it could not be held that the defendant was estopped or that he had waived the allegedly erroneous denial of his motion. We are persuaded that, in this precise fact situation, the rule of *Cephus* is correct and that we should review the denial of defendant's motion for acquittal on the basis of the evidence as it existed at the close of the prosecution's case.

Before proceeding, we pause to point out that section 1118.1 authorizes a motion for acquittal to be made "at the close of the evidence on either side." The practice of permitting a defendant to make the motion after the evidence is in and have it deemed made at the close of the prosecution's case is not to be encouraged. As evidenced by the case at bench, such practice can only lead to problems for the trial and appellate courts and tend to defeat the manifest purpose of section 1118.1 which is to terminate the

case at the earliest possible time when the prosecution's evidence is insufficient to support conviction.

In arguing that the trial court erroneously denied his motion for acquittal, defendant relies principally upon *People* v. *Crandall,* 275 Cal.App.2d 609 [80 Cal.Rptr. 81], contending that there is no substantial evidence that he possessed marijuana. Implicit in this argument and contention is the further unstated premise that, to be guilty of transportation of marijuana, the accused must have had possession thereof.

It is, of course, well established that to convict an accused of possession of marijuana it must be proved that he had knowledge of its presence, that he had knowledge of its character and that he had either actual or constructive possession of a usable quantity thereof. (*People* v. *Francis,* 71 Cal.2d 66, 71-72 [75 Cal.Rptr. 199, 450 P.2d 591]; *People* v. *Groom, supra,* 60 Cal.2d 694, 696; *People* v. *Redrick, supra,* 55 Cal.2d 282, 285.)
It is necessary to a finding of either actual or constructive possession that the accused had the right to exercise dominion and control over the contraband or at least that he had the right to exercise dominion and control over the place where it was found. (*People* v. *Francis, supra; People* v. *Groom, supra.*) Conviction is not precluded, however, if the defendant's right to exercise dominion and control over the place where the contraband was located is shared with another. (*People* v. *Francis, supra,* at p. 71; *People* v. *Jackson,* 191 Cal.App.2d 296, 302 [12 Cal.Rptr. 748].)
Additionally, even though there is no evidence that he, himself, had possession, a defendant may be convicted of possession of marijuana as a principal if he aided and abetted the possession of another. (Pen. Code, §§ 31 and 971; *People* v. *Francis, supra,* 71 Cal.2d 66, 72.) " '[T]he test is whether the accused in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures.' " (*People* v. *Francis, supra.*)

Defendant's unstated premise that to be convicted of transporting marijuana under Health and Safety Code, section 11531, he must have had possession of the marijuana is unfounded. Proof of possession by the defendant is not essential to a conviction of transportation. (*People* v. *Vasquez,* 135 Cal.App.2d 446, 448 [287 P.2d 385]; see also 2 Witkin, Cal. Crimes (1963) p. 644, § 707.) Where it is shown that the defendant was transporting another person in his automobile and that he knew the other person possessed marijuana, a conviction for transportation is proper. (*People* v. *Vasquez, supra.*)

The evidence at the close of the prosecution's case showed undisputedly that the woman codefendant had thrown out of the car the partially smoked marijuana cigarette and had on her person two bags of marijuana.

The officer observed defendant driving the automobile in which the co-defendant was the passenger. With respect to the charge of transportation, then, the only question is whether there is any evidence from which it could reasonably be inferred that defendant knew of the codefendant's possession of the marijuana and its narcotic character. Defendant's dilatory conduct in stopping the car from which it could be inferred that he was attempting to give the codefendant time to dispose of the contraband; his conduct in immediately getting out of the vehicle and approaching the officer from which it could be inferred that he wanted to keep the officer away from the vehicle; his gratuitous statement to the officer that he did not smoke cigarettes from which it could be inferred that he was trying to disassociate himself from the incriminating evidence thrown out of the vehicle by the codefendant; and his asking the officer whether he intended to search the codefendant, all support rather cogently an inference that defendant knew of the presence of the contraband in the vehicle, both the cigarette and the bags of marijuana on the person of the codefendant. No explanation has been suggested for defendant's asking the officer whether he intended to search the codefendant other than defendant's apparent concern because of his knowledge of the existence of the bags of marijuana on her person. There was, therefore, at the close of the prosecution's case, sufficient evidence to support a conviction of defendant for transportation of marijuana.

■ While the evidence on the charge of possession may be somewhat weaker, we have concluded that there was sufficient evidence to support defendant's conviction of that offense also. *People* v. *Crandall, supra,* 275 Cal.App.2d 609, is not controlling. In that case the officers observed something being thrown out of a vehicle which was later identified as contraband. There were three individuals in the vehicle, and while it was perfectly clear that at least one of them was guilty of possession, there was absolutely no evidence from which it could be determined which one of the three actually possessed the contraband and no evidence from which it could be inferred that any specific individual in the car knew of its presence and narcotic character.

Conversely, in the case at bench at the close of the prosecution's case there was evidence from which it could be inferred that defendant had actual or constructive possession of at least the partially smoked marijuana cigarette and had knowledge of its existence and narcotic character. Although it was the woman codefendant who actually threw the cigarette out of the window, just before doing so she was observed reaching down to the floorboard, and when the officer found the cigarette moments later it was not warm to the touch. The inference is that she was not smoking the cigarette at that time and that she picked it up from the floorboard. When the officer asked her what kind of cigarettes she smoked, she denied smoking at all.

If this statement were believed, it would lead to the conclusion that the cigarette belonged to defendant. This conclusion would be verified to some extent by the fact that marijuana fragments were found on the floorboard on the driver's side, whereas none were found on the floorboard on the passenger's side. It could be inferred that the marijuana fragments came from the partially smoked cigarette and that the partially smoked cigarette was on the floorboard on the driver's side when the woman codefendant picked it up and threw it out the window. The vehicle was being driven by defendant, supporting an inference that he had the right to exercise dominion and control over it. Indulging these inferences, it would appear that the cigarette was located in a place immediately accessible to defendant and subject to the joint access, dominion and control of defendant and codefendant, which would support a finding of constructive possession. (*People* v. *Francis, supra,* 71 Cal.2d 66, 71.) The foregoing inferences and the inference that defendant knew of the existence and narcotic nature of the marijuana cigarette find additional support in defendant's gratuitous statement to the officer that he did not smoke cigarettes, from which it could reasonably be concluded that he was anxious to disassociate himself from the marijuana cigarette thrown out of the window, and his dilatory conduct in stopping the vehicle after the officer had turned on his red light, from which it could reasonably be concluded that defendant was attempting to give the codefendant an opportunity to dispose of the cigarette. The elements of the crime of possession of marijuana may be proved by circumstantial evidence (*People* v. *Groom, supra,* 60 Cal.2d 694, 696-697), and convictions have been upheld on circumstantial evidence similar to that existing at the close of the prosecution's case. (Cf. *People* v. *Doerr,* 266 Cal.App.2d 36 [71 Cal.Rptr. 889]; *People* v. *Slade,* 264 Cal.App.2d 188 [70 Cal.Rptr. 321].)

### Uncorroborated Accomplice Testimony

From the foregoing discussion it is obvious that defendant's contention that his conviction rests entirely on the uncorroborated testimony of an accomplice is without merit. Corroboration of the testimony of an accomplice is, of course, required. (Pen. Code, § 1111.) Although the corroboration must connect the defendant with the commission of the offense, it "may be slight and entitled to little consideration when standing alone." (*People* v. *Wade,* 53 Cal.2d 322, 329 [1 Cal.Rptr. 683, 348 P.2d 116].) The requisite corroboration may be provided by circumstantial evidence. (*People* v. *Hurd,* 5 Cal.App.3d 865, 875 [85 Cal.Rptr. 718]; *People* v. *Haeberlin,* 272 Cal.App.2d 711, 722 [77 Cal.Rptr. 553].) As previously set forth at length, the presence of the marijuana fragments on the floorboard on the driver's side, defendant's dilatory

conduct in stopping the car, his immediately getting out of the car and approaching the officer, his gratuitous statement that he did not smoke cigarettes; and his asking the officer whether he intended to search the codefendant all constitute circumstantial evidence from which inferences may be drawn connecting defendant with the crimes of possession and transportation of marijuana. Moreover, the officer's observation that the codefendant reached down to the floorboard of the car just before throwing the cigarette out of the window corroborated her testimony that the bags of marijuana were on the floorboard in front of her, which would further indicate defendant's knowledge of the presence and character of the contraband. There was ample corroboration.

### The Accomplice Instruction

Defendant requested and the trial court refused to give an instruction that the woman codefendant was an accomplice as a matter of law. The court did specifically instruct the jury that it could find codefendant Snipes an accomplice and that if it did her testimony as to defendant must be corroborated. A further instruction was given on the nature of the corroboration required. The statutory definition of an accomplice contained in Penal Code, section 1111 was not requested and was not given.

Defendant contends that the court erred in refusing his request to instruct that the codefendant was an accomplice as a matter of law and, alternatively, that the court erred in failing to give, *sua sponte,* an instruction containing the statutory definition of an accomplice.

■■■ Generally, when it appears that a witness is an accomplice as a matter of law, it is error for the trial court to refuse to so instruct the jury, thus leaving to the jury the determination of the question. (*People* v. *Luker,* 63 Cal.2d 464, 472 [47 Cal.Rptr. 209, 407 P.2d 9]; *People* v. *Ferlin,* 203 Cal. 587, 601 [265 P. 230].) The case at bench, however, presents a unique, but not unprecedented, situation with respect to this issue. If the trial court instructed the jury that the codefendant was an accomplice as a matter of law, he would, in effect, be instructing the jury that the codefendant was guilty of the offenses charged, thereby invading the province of the jury with respect to the determination of her guilt or innocence. Under these circumstances, the trial judge was compelled to leave the matter to the jury, and there was no error in refusing to instruct that the codefendant was an accomplice as a matter of law. (*People* v. *Hill,* 66 Cal.2d 536, 555 [58 Cal.Rptr. 340, 426 P.2d 908]; see also *People* v. *Catlin,* 169 Cal.App.2d 247, 254-255 [337 P.2d 113].)

In support of his contention that the trial court had a duty, *sua sponte,* to give an instruction defining an accomplice, defendant cites *People* v.

*Jones,* 228 Cal.App.2d 74, 95 [39 Cal.Rptr. 302] and *People* v. *Featherstone,* 67 Cal.App.2d 793, 797 [155 P.2d 685]. It is difficult to ascertain whether these cases really stand for the proposition that the court has this duty *sua sponte.* ▮ It is correctly stated in each opinion that when the determination of whether or not a witness is an accomplice is left to the jury, the court should instruct as to what constitutes an accomplice.

▮ Although the trial court did not define an accomplice in the words of the statute: "An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant . . ." (Pen. Code, § 1111), he did give an instruction containing the definition of an aider and abettor and another instruction that "[a]ll persons concerned in the commission of the crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission . . . are regarded by the law as principals in the crime thus committed and are equally guilty thereof." The California Supreme Court has, at least in one case, defined an accomplice in very much the same language. (See *People* v. *Shaw,* 17 Cal.2d 778, 799-800 [112 P.2d 241].)

In any event, we note that the failure to instruct that a witness is an accomplice as a matter of law does not constitute prejudicial error per se and, a conviction will not be reversed in the absence of a showing of prejudice to the defendant therefrom. (*People* v. *Hill, supra,* 66 Cal.2d 536, 556; *People* v. *Luker, supra,* 63 Cal.2d 464, 472; *People* v. *Ferlin, supra,* 203 Cal. 587, 601.) ▮ The failure, *sua sponte,* to give an instruction defining an accomplice in the precise language of the statute is a less grievous error than failing to give an instruction that a witness is an accomplice as a matter of law, and the latter error, like the former, should not be considered reversible error in the absence of demonstrable prejudice to defendant. (See *People* v. *Jones, supra,* 228 Cal.App.2d 74, 95-96; cf. *People* v. *Luker, supra; People* v. *Ferlin, supra; People* v. *Hill, supra.*) ▮ No such prejudice to defendant is found in the case at bench. The jury was instructed that it could find codefendant Snipes an accomplice and that if it did it must view her testimony incriminating defendant with distrust and that her testimony as to defendant must be corroborated to support a conviction of him. Inasmuch as the jury also found codefendant Snipes guilty of both offenses, they must have found her to be an accomplice. (*People* v. *Hill, supra;* see also *People* v. *Luker, supra.*) It must be presumed that the jurors observed and applied the instruction given them. (*People* v. *Chavez,* 50 Cal.2d 778, 790 [329 P.2d 907]; *People* v. *Ferlin, supra,* 203 Cal. at p. 601.) The failure, therefore, *sua sponte* to give an instruction defining an accomplice in the precise words of the statute could

not have been prejudicial. *(People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

Affirmed.

Gabbert, Acting P. J., and Kerrigan, J., concurred.