Filed 10/22/14  P. v. Moore CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GREGORY DAVID MOORE,<br><br>    Defendant and Appellant. | G048832<br><br>(Super. Ct. No. 12WF1403)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge.  Affirmed.

John Derrick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric Swenson and Barry Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Gregory David Moore guilty of residential burglary. The trial court sentenced Moore to nine years in prison. On appeal, Moore challenges the denial of his his Penal Code section 1118.1 motion made following the prosecution's case-in-chief.[1] He contends the prosecution fell short in providing sufficient evidence to link him to the burglary. Specifically, Moore maintains there was insufficient evidence to reasonably infer he was inside the residence. Finding his argument lacks merit, we affirm the judgment.

I

The scope of this appeal challenges the trial court's denial of a section 1118.1 motion made by Moore after the prosecution's case-in-chief. Accordingly, for purposes of our review we focus our summary of the facts on the evidence presented in the prosecution's case-in-chief.

Laura Amador, a house sitter, lived alone at a beach house in Sunset Beach. The house is situated having its north side facing the street and its south side facing the ocean. On the west and east sides of the house are long walkways, both of which are gated off and not intended for public access. These walkways (also called breezeways) are approximately 150 feet in length. Amador was the only person who had access or permission to be within the home, other than a window cleaner.

One night, Amador locked the three-story house before she went to bed around 9:30 p.m. No one else was inside the house, and nobody except Amador had permission to come into the house that night. Amador's bedroom is in a second-floor studio located inside the home. The studio has its own private entrance and exit. At 2:40 a.m., Amador was asleep when she heard a loud hammering noise. Amador got out of bed and looked through a window in her room towards the street. She did not see

---

[1]    All further statutory references are to the Penal Code.

anything outside and went back to bed. Five minutes later, she heard another noise, like a chair being dragged, or a drawer opening. Amador got out of bed, went to the door of her studio, and tried to listen more closely. Amador heard a closet door open right outside her bedroom. She also saw a light turn on and off. Amador did not hear any talking or conversations. She also never saw any person inside the house; she just heard the noises described above.

Amador exited the house through a side door attached to the garage, one of the four exits from the house. She got in her car, drove two blocks, and called the police. The dispatcher told her to return to the house and speak with the police officers.

Huntington Beach Police Officer Jesse Crawley responded to the scene along with two other officers. One of the officers stationed himself on the street side of the house, while Crawley and the third officer stood on either side of the house in the walkways towards the beach end of the house. From his position, Crawley saw Moore standing in the walkway. Crawley had previously walked down that same breezeway minutes before and had not seen anybody there.

Crawley identified himself as a police officer, told Moore to stop moving, and asked him to put his hands up. Moore, originally walking towards Crawley, began moving quickly in the opposite direction towards the street once he heard Crawley yelling to stop. Crawley ran after Moore, and by the time Crawley got to the street, another police officer had placed Moore on the ground and was handcuffing him.

Amador spoke with the officers and explained what she heard and saw earlier that night. The police searched the house for other intruders and did not find anyone. Amador entered the house with the police officers, and they found many disturbances and misplaced items: There were recent food preparations made in the kitchen, a burnt pan along with bacon and eggs on a plate, a broken door that was ajar, a

3

blanket and pillow on a third-floor couch, a lawn chair made up like a bed, and a television that was on. Amador stated she did not go to bed with the house in this messy condition, and the door was in good working order and locked.

Following this evidence and testimony, Moore made a section 1118.1 motion. The trial court denied the motion stating it found inferences and circumstantial evidence to support the fact Moore may have committed a residential burglary. The trial court reasoned the evidence of a broken door indicated someone had forced their way into the house and made an unauthorized entry. Further, since there were drawers opened and objects moved around, one could reasonably infer the intruder had a felonious intent to commit larceny. The court determined Moore's presence next to the property a short time after the police were called created a strong inference Moore was the individual inside the residence. It concluded there was substantial evidence of every element required for a residential burglary.

Moore next presented his defense. He told an elaborate story in which he admitted he was in the house but asserted he had permission from a new friend to enter and to stay the night. He claimed he woke up around 3:00 a.m. and left the house to buy coffee from a 7-Eleven store when police apprehended him.

The prosecutor presented rebuttal evidence. One of the police officers testified he actually witnessed Moore walking through the garage moments before he was apprehended outside. Another police officer testified Moore kept changing his story while being questioned.

II

The sole issue on appeal is whether there was sufficient evidence after the prosecution's case-in-chief to deny Moore's section 1118.1 motion. Moore asserts there was not enough evidence to link him to the burglary, and the trial court should have granted his section 1118.1 motion.

4

Section 1118.1 reads in relevant part: "In a case tried before a jury, the court on motion of the defendant . . . shall order the entry of a judgment of acquittal of one or more of the offenses charged . . . if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." The purpose of a section 1118.1 motion is to "weed out" those few instances where the prosecution fails to even make a prima facie case. (*People v. Shirley* (1982) 31 Cal.3d 18, 70.) "[T]he question under section 1118.1 is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination." (*People v. Ainsworth* (1988) 45 Cal.3d 984, 1024.)

The test to be applied by an appellate court is the same test the trial court applies when deciding a section 1118.1 motion. The test is "whether from the evidence, including reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged. [Citations.]" (*People v. Valerio* (1970) 13 Cal.App.3d 912, 919.)

Burglary is defined under section 459 as being committed by any "person who enters a house, room, apartment . . . with intent to commit grand or petit larceny or any felony." Here, there is no dispute somebody broke into the house and committed a burglary. The only possible issue at the time of the section 1118.1 motion was the identity of the person who entered the house. We find there was sufficient evidence Moore was the culprit.

It is reasonable to infer from the evidence that Moore entered the side walkway from *inside the home*. There was undisputed evidence showing the only ways of entering the walkway was from either end (both of which had police officers in the vicinity) or from inside the house. The chances of Moore coming from either end of the walkway are lessened by evidence the breezeway ends were gated. Moore would have been required to open the gate, go through it, and then close it, all without making a

5

sound and without any of the officers posted at the north and south ends of the house seeing his movements. In addition, it was significant Moore was found in the walkway of a house that had just been broken into and, more importantly, the very same walkway a police officer had just traversed. Also telling is that Moore fled when Crawley spotted him. Such conduct is often a sign of guilt. (See *People v. Williams* (2013) 56 Cal.4th 630, 679 [defendant's flight after a crime was "committed supports an inference of consciousness of guilt and constitutes an implied admission"].)

On appeal, Moore claims he was walking on the beach and trying to cut through to get to the street in order to get out of the neighborhood. This inference is not supported by the evidence. Crawley, who was standing at the beach end of the walkway, testified Moore was first spotted walking *towards* him. From this testimony, one could infer Moore was either walking from the street end of the walkway towards the beach, or he came from inside the house and was walking towards the beach. The prosecution's evidence only supports the second inference.

Specifically, police cars were parked on the street side of the house, and a reasonable person would not likely risk trespassing onto private property, particularly at the early hour of 3:00 a.m., when it was clear police officers were in the vicinity. And if Moore had attempted to enter the breezeway from the street, it is highly likely one of the officers standing there would have stopped him. In short, it is not reasonable to infer Moore entered the walkway from the street side because of the police cars and a police officer in that location.

In light of these facts, we find the prosecution presented sufficient evidence to allow the case to go to the jury. The trial court reasonably inferred from the evidence Moore was likely the person who broke into the house that night. As stated in *Shirley, supra,* 31 Cal.3d at page 70, a section 1118.1 motion is made to "weed out" those *few* instances where the prosecution fails to *even* make a prima facie case. This situation is not one of those few instances. There is a probability, if not a high probability, that it

6

was Moore inside the house that night. The prosecution established enough evidence in its case-in-chief to deny Moore's section 1118.1 motion.

III

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


THOMPSON, J.

7