Filed 5/31/23  P. v. Wallace CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CLINTON D. WALLACE,<br><br>    Defendant and Appellant. | A166462<br><br>(Solano County<br>Super. Ct. No. VCR238974) |

A jury convicted Clinton D. Wallace of three counts of being a felon in possession of a firearm (Pen. Code[1], § 29800, subd. (a)(1)) and one count of being a felon in possession of ammunition (§ 30305, subd. (a)(1)).  Wallace claims on appeal that insufficient evidence supports these convictions.  He also argues that his statement regarding his place of employment was obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), and should not have been used against him at trial.  Finding no reversible error, we will affirm.

### BACKGROUND

The Bureau of Gambling Control for the California Department of Justice (DOJ) received information regarding an illegal gambling

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

operation at 2408 Sacramento Street in Vallejo, California. Sources referred to the gambling establishment as "the Buy Zone." On December 15, 2021, at about 9:00 a.m., DOJ agents executed a search warrant at the property. Inside the main building on the property, agents found evidence of gambling operations, as well as three females, including Erika Montero, the alleged manager of the operation, and Denise Helmeci.

There was also an outbuilding on the property that was about 50 feet long and 20 feet wide. Agents knocked on the front of the outbuilding and announced they were executing a search warrant. About 45 seconds later, Wallace "stumbled out of a back bedroom area" of the outbuilding. Another person, Elijah Abeyta, came out as well. Upon entry, agents found no other people.

The outbuilding appeared to be converted into a living dwelling, with a small living room area, an area that appeared designed as a bedroom, a bathroom, and a kitchenette. The place was messy, and there were bags of clothes and other items strewn throughout the building. There was old food in the kitchenette. In the rear of the bedroom, there were many bags, primarily containing baby and women's clothes.

On or near a television stand in the front living room area of the outbuilding, agents found the following: (1) a loaded shotgun; (2) an unloaded shotgun; and (3) a lower-receiver for an AR-15 style rifle. The loaded shotgun was behind a rug that had been nailed to the wall next to the television stand. The unloaded shotgun was in the bottom, slightly ajar drawer of the television stand. The lower receiver was in a bag on the top shelf of the television stand. This bag also contained

drill bits and screws that could be used to make a rifle, two upper receivers for an AR-15 style rifle, an empty rifle magazine, and 20 live ammunition rounds.  Agents found a tactical box in the television stand with drill bits; a jig, which an agent testified could be used to "mill out or drill into the lower receiver of AR-15 style rifles"; various subparts of an AR-15; four boxes of ammunition; and loose ammunition.  A plastic bag on the television stand contained six 12-gauge shotgun rounds and a single rifle round.  In addition, the rear stock of a rifle was behind the television stand and there were four rifle rounds on a shelf by the front door.

On the same shelf by the front door with the four rifle rounds, the agents found paperwork belonging to Wallace.  Agents found "additional paperwork with [ ] Wallace's name listed on it from a grey luggage bag located in that same front living room."  Some men's clothing was in the luggage bag.  In the bedroom, by "where [one's] head would lie for the bed," agents found envelopes addressed to Wallace with an address of Hopkins Drive in Fairfield.  In the same location, agents found an envelope addressed to Darnell Tailor.  Also in the outbuilding, agents found medication for Helmeci and paperwork in Montero's name.

Wallace's mother testified that she lived on Hopkins Drive in Fairfield in December 2021, and that Wallace used her address for his mail.  He had stayed at her house "off and on maybe a couple days here or there" in the year and a half before the December 2022 trial.  However, in December 2021, Wallace told her that he was "living in Vallejo, um, in a shack on Sacramento Street."  He also lived with his stepdaughter in Vacaville for a few weeks in December 2021.  Wallace

3

told a probation officer that he lived with his mother in Fairfield, and he told both his mother and the probation officer that he worked as a security guard at the Buy Zone.

An amended information charged Wallace with three counts of being a felon in possession of a firearm (§ 29800, sub. (a)(1)) and one count of being a felon in possession of ammunition (§ 30305, subdivision (a)(1)). A jury found Wallace guilty on all counts. The trial court sentenced him to four years in prison, and Wallace filed a timely appeal.

## DISCUSSION

### *The Substantial Evidence Claim*

We first address Wallace's claim that there was insufficient evidence that he had actual or constructive possession of the firearms or ammunition at issue. As set forth below, we agree with the Attorney General that substantial evidence supports a conclusion that Wallace constructively possessed these items.[2]

In analyzing this claim, " ' " 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" [Citation.] In conducting such a review, we " 'presume[ ] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" [Citations.] "Conflicts and even testimony which is subject to justifiable suspicion do not justify the

---

[2] The Attorney General does not contend that there was substantial evidence of actual possession.

4

reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' " (*People v. Harris* (2013) 57 Cal.4th 804, 849.)

This standard of review also applies " 'in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] " 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " ' " (*People v. Harris*, *supra*, 57 Cal.4th at pp. 849–850.)

"The firearm- and ammunition-possession offenses prohibit a felon from 'possess[ing]' or having 'under custody or control' the given item (§§ 29800, subd. (a)(1), 30305, subd. (a)(1)), and they are general-intent crimes that require knowing possession of the prohibited item. [Citations.] Possession may be actual or constructive. ' "A defendant has actual possession when the weapon is in his [or her] immediate possession or control," ' i.e., when he or she is actually holding or touching it. [Citations.] 'To establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person.' [Citations.] Although a defendant may share possession with other people, 'mere proximity' or opportunity to access the contraband,

5

'standing alone, is not sufficient evidence of possession.' " (*People v. Bay* (2019) 40 Cal.App.5th 126, 131–132.)

"Conviction is not precluded . . . if the defendant's right to exercise dominion and control over the place where the contraband was located is shared with another." (*People v. Valerio* (1970) 13 Cal.App.3d 912, 921; *People v. Rushing* (1989) 209 Cal.App.3d 618, 622.) Nor is there a requirement that the defendant be the legal owner of the location where the contraband is located. (See *People v. Williams* (2009) 170 Cal.App.4th 587, 603, 625 [drugs and weapons found in room defendant used in his aunt's house].)

Here, there was substantial evidence from which a reasonable jury could conclude that Wallace constructively possessed the firearms and ammunition. Wallace contends that the evidence was insufficient because it established mere proximity and not that he owned or controlled the outbuilding, but the evidence was not so limited. When the police arrived at the outbuilding at around 9:00 a.m., Wallace emerged from the bedroom area. Mail addressed to Wallace was found in the crack between the mattress in the bedroom and the wall. In the front room with the firearms and ammunition, agents found ammunition on a shelf along with Wallace's paperwork. A suitcase containing male clothing and more of Wallace's paperwork sat in the same room. The buildings at issue were located at 2408 Sacramento Street in Vallejo, and Wallace's mother testified that Wallace told her that he was living in a shack on Sacramento Street in Vallejo in December 2021. His mother also testified that Wallace worked at the Buy Zone, and the evidence established that the Buy Zone was on the same property as the outbuilding. This evidence thus supported a

6

conclusion that Wallace was residing in the outbuilding and constructively possessed the firearms and ammunition as charged.

### The Alleged Miranda Violation

Wallace's second claim is that the court erroneously admitted his statement to a probation officer that he was working at the Buy Zone in violation of his rights under *Miranda*, *supra*, 384 U.S. at pages 478–479, which requires that certain admonitions be given before a suspect's statement made during custodial interrogation can be admitted in the prosecution's case-in-chief. The Attorney General counters that Wallace's statement fell within *Miranda*'s booking exception, and, in any event, the error was harmless. We agree with the Attorney General's latter point, so we do not decide whether the booking exception applies.

Any error in admitting the probation officer's testimony as to Wallace's statement about the Buy Zone was not prejudicial. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Elizalde* (2015) 61 Cal.4th 523, 542.) Wallace argues that his statement was prejudicial because it was key to establishing that he possessed the prohibited items for his work, his statement was akin to a confession, and the prosecution highlighted his statement in closing argument. But Wallace made the exact same statement to his mother. Wallace's mother testified that Wallace was working as a security guard, and she could not remember the name of the establishment, but it was "a gambling place." She then remembered and said, "It was the Buy Zone." The defense did not attack Wallace's mother's credibility. In closing, the prosecutor argued that Wallace told his mother he was living in a shack on Sacramento Street, and the prosecutor immediately

thereafter stated that Wallace had said he was working at the Buy Zone as a security guard.  There was no attribution of Wallace's statement as one given solely to the probation officer, and the testimony of both Wallace's mother and the probation officer relayed the exact same information.  Moreover, regardless of any testimony as to where he worked, Wallace and his indicia were at the search location when and where the prohibited items were found.  Accordingly, any admission of the probation officer's duplicative testimony as to Wallace's place of employment was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.



BROWN, P. J.


WE CONCUR:

GOLDMAN, J.
FINEMAN, J.[3]


*People v. Wallace (*A164662)

---

[3] Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.