Filed 1/15/16  In re D.S. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re D.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>D.S.,<br><br>        Defendant and Appellant. | A144081<br><br>(San Francisco City & County<br>Super. Ct. No. JW 14-6270) |

The juvenile court found appellant D.S., a minor, committed second degree robbery and felony false imprisonment.  Appellant now argues there was insufficient evidence to prove he was involved with these crimes.  Appellant also challenges his sentence, arguing the case should be remanded with instructions to specify the maximum term of confinement and award him credits for time served.  We conclude the juvenile court's findings are supported by substantial evidence, but remand for the limited purpose of calculating appellant's maximum term of confinement and credits.

## I.  BACKGROUND

On September 23, 2014, the San Francisco District Attorney filed a juvenile wardship petition against appellant pursuant to Welfare and Institutions Code[1] section 602, subdivision (a).  The petition alleged appellant committed (1) attempted

_____

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

second degree robbery by trying to take a laptop from Patrick Nevels (Pen. Code, §§ 664/212.5, subd, (c); count 1) and (2) second degree robbery by taking a cell phone from Nevels (*id.*, §§ 211, 212.5, subd. (c); count 2). The petition lists J.W. and J.T as cominors. The petition was later amended to add a third count for felony kidnapping (*id.*, § 209, subd. (b)(1); count 3), to add Z.C. as an additional cominor, and to amend count 1 to charge appellant with attempted second degree robbery of both a laptop and a backpack.

Nevels testified as follows. On September 21, 2014, about 8:50 p.m., he was walking near the 900 block of Market Street in San Francisco. Someone placed a gun against the back of his head and demanded his iPhone. Nevels saw three assailants. One of them reached into Nevels's pocket and took the phone. Two of the assailants demanded Nevels's backpack, which contained a laptop. When he refused to turn over the backpack, one of the assailants tried to unzip it. Nevels walked away and an assailant behind him continued to hold the backpack. Nevels then tried to negotiate, offering to withdraw cash from an ATM and give it to the assailants instead of the backpack. The assailants agreed. As they walked up Market Street to find an ATM, one of the assailants said, "do you want to die" and "do you want me to shoot you in the mouth." The assailant pistol-whipped Nevels, at which point he realized the gun was fake. Nevels ran into the street, dragging one of the assailants with him. He waived down a police officer, and said "these three people . . . just mugged me." The officer then "just pulled right up and arrested the three of them."

At the jurisdiction hearing, Nevels was shown pictures of appellant, J.T., and J.W., which were taken after their arrest. Appellant is shown wearing a North Face jacket, dark pants, and light shoes. Nevels recognized appellant and J.T. as two of the persons who had been arrested by the officer, but he did not recognize them from the incident. He recognized J.W. from both the arrest and the incident, stating J.W. was the one who had held onto his backpack and threatened him with the fake gun.

Several surveillance videos were also admitted into evidence. The videos show two assailants confronting Nevels, as one of them points something at Nevels's head and

2

then holds onto Nevels's backpack.  Two other individuals approach and confront Nevels, one of whom appears to be wearing a North Face jacket and light shoes similar to the ones worn by appellant in the photograph identified by Nevels at the jurisdiction hearing.  The individual in the North Face jacket appears to take something out of Nevels's pocket and hand it to one of the other assailants, who runs away from the scene.

When interviewed by police after the incident, appellant stated he was dancing in front of Show Dogs, at the corner of Market Street and Taylor Street, and said, "What's up, Bro?" to someone standing next to him.

The police identified Z.C. from the surveillance videos and detained him.  Z.C. waived his *Miranda*[2] rights, and stated he was at the police station "Because of that dumb shit in front of the Crazy Horse."  Z.C. said there was a robbery with a fake gun.  He identified Nevels as the victim, and said a cell phone had been taken from him.  Z.C. also admitted he had received the stolen cell phone and sold it for $75.

After the district attorney rested, appellant moved to dismiss all counts pursuant to section 701.1.  The motion was granted as to the kidnapping count, but otherwise denied.  At the conclusion of the hearing, the San Francisco juvenile court found true counts 2 and 3, which charged appellant with second degree robbery of the cell phone and felony false imprisonment.  Count 1, the attempted robbery of the laptop and backpack, was found not true.

Appellant was adjudged a ward of the court and his case was transferred to Solano County, where a separate wardship petition had been filed.  The matter was later transferred back to San Francisco for disposition.  The court committed appellant to the care and custody of the probation department, to be placed at an out-of-state facility, and imposed several conditions of probation.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

## II. DISCUSSION

### A. *Sufficiency of Evidence*

Appellant argues the juvenile court erred in denying his section 701.1 motion to dismiss the charges against him. Section 701.1 is substantially similar to Penal Code section 1118, which governs motions to acquit in criminal trials. (*In re Anthony J.* (2004) 117 Cal.App.4th 718, 727.) Thus, in ruling on a section 701.1 motion, the juvenile court must "weigh the evidence, evaluate the credibility of witnesses, and determine that the case against the defendant is 'proved beyond a reasonable doubt before [the defendant] is required to put on a defense.' " (*In re Andre G.* (1989) 210 Cal.App.3d 62, 66.)

"[T]he standard for review of the juvenile court's denial of a motion to dismiss is whether there is substantial evidence to support the offense charged in the petition. [Citation.] In applying the substantial evidence rule, we must 'assume in favor of [the court's] order the existence of every fact from which the [court] could have reasonably deduced from the evidence whether the offense charged was committed and if it was perpetrated by the person or persons accused of the offense. [Citations.] Accordingly, we may not set aside the trial court's denial of the motion on the ground of the insufficiency of the evidence unless it clearly appears that upon no hypothesis whatsoever is there sufficient substantial evidence to support the conclusion reached by the court below.' " (*In re Man J.* (1983) 149 Cal.App.3d 475, 482.)

Here, appellant argues there was insufficient evidence to connect him with the crime. He contends Nevels could not identify him as a participant in the incident, and the surveillance videos were too dark and grainy to identify any particular person. Appellant also argues his statement to the police that he was at Show Dogs, without specifics of date and time, was worthless. Even if he was at Show Dogs, appellant argues that would not prove he participated in the robbery, because it took place somewhere on the next block. Appellant asserts the evidence merely shows he was standing near J.W. and J.T on Market Street at sometime after the robbery, he was arrested along with J.W. and J.T., he was recognized by Nevels as being arrested, and someone with similar hair and attire was standing near the robbery.

4

Appellant's arguments are unavailing. Nevels testified the police arrested the three individuals who had robbed him, and he also identified appellant as one of the individuals who was arrested. This alone is substantial evidence appellant participated in the charged crimes. While at one point Nevels testified he could only identify appellant from the arrest, in light of Nevels's other testimony, the juvenile court could have reasonably concluded Nevels also recognized appellant from the robbery. To the extent Nevels's testimony was inconsistent, we must view the record in the light most favorable to the judgment. (*People v. Johnson* (1980) 26 Cal.3d 557, 562.)

More importantly, the juvenile court had more than eyewitness testimony. The surveillance videos of the incident offer compelling evidence appellant was involved in the robbery. The quality of these videos is not as poor as appellant contends. They show an individual who strongly resembles appellant follow and confront Nevels, grab something out of Nevels's pocket, and hand it to one of the other assailants. The videos appear to show this individual was wearing the same jacket, pants, and shoes as appellant on the night he was arrested. Two of these videos also have shots of appellant's face and head. It was not unreasonable for the trial court to conclude the individual in the video was involved in the robbery, or that the individual was appellant. Indeed, considering the totality of the evidence, it would have been unreasonable for the court to find otherwise.[3]

Accordingly, we find the juvenile court's decision was supported by substantial evidence.

---

[3] Contrary to appellant's contentions, *People v Redmond* (1969) 71 Cal.2d 745, is inapposite. In that case, the court found there was insufficient evidence to identify the defendant as the perpetrator of the crime. (*Id.* at p. 757.) Unlike here, the assailant in *Redmond* wore a mask covering his entire face, and there was no video surveillance of the crime. (*Id.* at pp. 748–749.) At a police lineup, one of the two victims picked out the defendant based on a similarity in voice and " 'an expression across the eyes.' " (*Id.* at p. 750.) At trial, the victim conceded she was unable to identify the defendant at the lineup, saying she thought the assailant was bigger. (*Ibid.*) She testified only that the defendant resembled her assailant. (*Id.* at p. 756.) The facts here are substantially different.

**B. Sentencing**

Appellant argues the juvenile court erred by failing to specify the maximum term of confinement and the credits earned for time spent in custody. The Attorney General concedes the claims have merit. We agree. (See § 726, subd. (d)(1) [order removing minor from parent's custody "shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense"]; *In re Emilio C.* (2004) 116 Cal.App.4th 1058, 1067 ["minor is entitled to credit against his or her maximum term of confinement for the time spent in custody before the disposition hearing"].) Accordingly, we remand for the limited purpose of determining appellant's maximum sentence and the calculation of credits.

### III. DISPOSITION

The matter is remanded for the purpose of calculating appellant's maximum term of confinement and credits. The judgment is affirmed in all other respects.

_____
Margulies, Acting P.J.

We concur:

_____
Dondero, J.

_____
Banke, J.

6