[No. D040331. Fourth Dist., Div. One. Apr. 7, 2004.]

In re ANTHONY J., a Person Coming Under the Juvenile Court Law.

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY J., Defendant and Appellant.

[No. D041558. Fourth Dist., Div. One. Apr. 7, 2004.]

In re ANTHONY J., a Minor, on Habeas Corpus.

## Counsel

John E. Edwards, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., Marvin E. Mizell and Ivy Fitzpatrick, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**NARES, J.**—In this juvenile adjudication proceeding, the San Diego County District Attorney filed a petition against defendant Anthony J., alleging under Vehicle Code section 10851 that he stole a vehicle (count 1), and under Penal Code section 496d that he received a stolen vehicle (count 2). The court denied Anthony J.'s motion to dismiss count 2 brought after the close of the People's case, and Anthony J. thereafter testified in his own defense. The court sustained the petition as to count 2 and dismissed count 1.

In April 2002, the court adjudged Anthony J. a ward of the court and placed him on probation under the supervision of his grandmother. In May 2002, the court held a restitution hearing and ordered that Anthony J. pay restitution under Welfare and Institutions Code section 730.6[1] in the amount of $5,334.10 to the person whose car was stolen.

No appeal was filed from the judgment sustaining the People's petition on count 2. However, Anthony J. did timely appeal the restitution order. Further, Anthony J. filed a petition for writ of habeas corpus (petition) seeking to set aside the judgment. The petition and the appeal have been consolidated for disposition.

On the appeal, Anthony J. asserts that the restitution order was erroneous because the evidence does not support a finding that the losses suffered by the

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

victim of the car theft resulted from his criminal conduct. In the petition, Anthony J. contends that he was denied effective assistance of counsel because of his attorney's failure to file a notice of appeal from the judgment, as an appeal would have resulted in a reversal since there is insufficient evidence to sustain the petition on count 2. In supplemental briefing requested by this court, Anthony J. also asserts that the petition must be granted because the court erred in denying his motion to dismiss brought at the close of the People's case. The People argue that the petition must be denied because there was no prejudicial ineffective assistance of counsel as Anthony J. waived his right to challenge denial of the motion to dismiss because his testimony given after the close of the People's case cured any deficiency in the People's case.

We conclude that Anthony J.'s petition is well taken as he was denied effective assistance of counsel by counsel's failure to file an appeal from the judgment and that ineffective assistance of counsel was prejudicial because the court erred in denying his motion to dismiss since there was insufficient evidence to sustain the petition on count 2 at the close of the People's case. We further conclude that Anthony J. did not waive his right to challenge the denial of the motion to dismiss by testifying in his own behalf because (1) under such circumstances we may still only consider the evidence as it existed at the time the People rested; and (2) there is insufficient evidence to sustain the petition even if we consider Anthony J.'s testimony.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The People's Case*

On the morning of January 14, 2002, at approximately 9:00 a.m., John Moreno arrived at the parking lot of a 24 Hour Fitness center on Balboa Avenue. He noticed a newer model silver/blue BMW pull in and park. Four Black males exited the vehicle. The driver was wearing brown clothes. The man on the passenger side in the front seat of the vehicle had a green backpack. Moreno observed that the four did not go towards the 24 Hour Fitness, but went toward the back entrance of the parking lot.

Moreno saw one of the youths looking back toward the BMW and then all four started running. Moreno then saw a police car going through the parking lot. Moreno started his vehicle and followed the police car. When the police vehicle stopped halfway up the street, Moreno stopped his vehicle and asked the police officers inside their vehicle if they were looking for "four Black kids." One officer responded, "Should we be?" Moreno then informed the police officers what he had seen. One of the officers asked Moreno to go back to the BMW and wait. Moreno did so and another officer arrived and talked to him about what had occurred.

After receiving Moreno's information, San Diego Police Officer Brandon Gaines and his partner saw four young Black males running southbound across Balboa Avenue toward a bus stop. The police officers drove to the next intersection, turned, and pulled behind the bus stop. The officers contacted the four youths and confirmed they were all under the age of 18. At trial, Officer Gaines identified Anthony J. as one of the youths that was at the bus stop.

Officer Gaines detained the four youths for being truant. He requested that another officer investigate the BMW in the 24 Hour Fitness parking lot. After it was determined the vehicle was stolen, Officer Gaines searched and then arrested the four youths.

One of the officers investigating the stolen BMW brought Moreno to where the youths were detained to conduct a curbside lineup. The officers asked each youth to stand and turn from side to side. Moreno identified the youth wearing brown as the driver of the BMW. He was not able to identify the others, including Anthony J.

Officer Gaines found a set of keys with a BMW emblem on it five to 10 feet away from the bus stop. He took the keys back to the stolen BMW and discovered that the keys were a fit for the car.

The parties stipulated that the BMW found in the 24 Hour Fitness parking lot was stolen out of a driveway with its engine running at 6:00 a.m. on January 11, 2002, and that the owner of the car was Bounthavy Savatdy.

B. *Motion to Dismiss*

At the close of the People's case, Anthony J. requested a judgment of dismissal. Although the court's statement on the record was somewhat unclear, it appears that the court denied the motion without prejudice to it being renewed following the defense case, the court stating, "If you choose to, you can deal with it after the testimony" of Anthony J.

C. *Defense Case*

Anthony J., 15 years old at the time of trial, testified in his own defense. He stated that on the morning of January 14, 2002, he was in the McDonald's restaurant by San Diego City College with a friend. His friend told him to "come on." Anthony J. and his friend went across the street, entered a BMW, and sat in the backseat. Anthony J. testified that he had seen the driver of the vehicle once before at a cousin's house, but did not know him well. He also testified that he did not know if the driver owned the car. According to Anthony J., the group drove around for about 20 to 30 minutes, and he was

riding in the backseat. They then stopped at the 24 Hour Fitness and exited the vehicle. Anthony J. claimed that during the ride they were listening to the radio and that there was no discussion about the car's origin.

According to Anthony J., they got out of the car to go to a sporting goods store. As they were walking to the store, he dropped something. At that point the other three started to run. He did not know why they were running but he ran after them. When he caught up with them he heard them say the BMW was stolen. Up until that time he did not know the vehicle was stolen.

### D. Court's Ruling

Following testimony and argument of counsel, the court sustained the People's petition on count 2. In doing so, the court rejected Anthony J.'s version of events:

"The court finds that [Anthony J.'s] story . . . that he was at the McDonald's restaurant when a very casual acquaintance, whose last name he didn't know, pulled him out of line and that he crossed the street to get into a car with two other people that he didn't know and did not have full knowledge that the car was not legally obtained is totally unbelievable and incredible. And therefore the court will not make its decision based on that absolutely unbelievable story. [¶] Having disregarded that basis for the actions of the minor, it's clear that only—the only appropriate finding in this case is a true finding as to the allegations and that therefore will be the finding of the court. The court finds beyond a reasonable doubt that the allegations contained in the petition are true and correct."

The court thereafter dismissed count 1, there having been no evidence submitted that Anthony J. had either driven or taken the vehicle.

### E. Restitution Hearing

At the restitution hearing, Savatdy testified that he was the owner of the stolen BMW. Savatdy also testified to the following losses related to the theft of his vehicle: (1) approximately 160 CD's at a value of $10 each, for a total of $1,600; (2) a baseball/football set valued at $60; (3) damage to the vehicle in the amount of $2,996.33 ($500 of that amount was a deductible for his car insurance, the rest was paid by his insurance); (4) replacement keys for his other vehicle which were lost when the car was stolen, at a cost of $531.77; and (5) new locks for his house at a cost of $16.

A screwdriver was missing from the BMW tool kit in the trunk. Replacement cost for the tool kit was $99.46. However, this amount was included in the cost for the repair of Savatdy's vehicle.

The court found that Savatdy's total damages were $5,334.10. The court ordered restitution in that amount, payable to Savatdy's girlfriend, as she co-owned the stolen BMW and was the listed insured on the vehicle. The restitution was made jointly and severally against Anthony J. and the other three minors in the stolen BMW.

Anthony J. did not file an appeal from the judgment, but did timely file an appeal challenging the restitution order. Anthony J. also filed a petition asserting ineffective assistance of counsel resulting from the failure of counsel to file a notice of appeal from the judgment. The petition and the appeal have been consolidated for disposition. Following oral argument, we issued an order to show cause and the parties waived additional oral argument.

## DISCUSSION

On his petition Anthony J. asserts that the judgment must be reversed based on ineffective assistance of counsel because counsel failed to file an appeal from that judgment. Anthony J. asserts that it is reasonably probable that he would have achieved a more favorable result because the judgment would have been reversed. Specifically, Anthony J. asserts that there is insufficient evidence to sustain the petition on count 2 as he, as a passenger, did not have "possession" of the stolen vehicle. Additionally, we requested the parties to address, in supplemental briefing, whether the court erred in denying Anthony J.'s motion to dismiss brought at the close of the People's case, and whether Anthony J. waived the right challenge the denial of the motion to dismiss by thereafter testifying in his own defense.

We conclude that Anthony J.'s counsel provided ineffective assistance of counsel by failing to file a notice of appeal from the judgment entered in this case. We further conclude that the ineffective assistance of counsel was prejudicial and requires a granting of the petition because (1) the court erred in denying Anthony J.'s motion to dismiss at the close of the People's case because there was insufficient evidence at that time to sustain the petition as to count 2; and (2) Anthony J. did not waive the right to challenge that denial by testifying in his own behalf. We hold that even if a defendant submits evidence that cures any deficiency in the People's case following an erroneous denial of a motion to dismiss, he or she does not waive the right to contest that erroneous denial. We further conclude that even if Anthony J.'s testimony is considered, the petition must still be granted because there is insufficient evidence to sustain the petition even when taking his testimony into account. Accordingly, we need not address Anthony J.'s appeal from the restitution order as that issue has now been rendered moot.

## A. *Ineffective Assistance of Counsel*

In *People v. Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839] (*Ledesma*) the California Supreme Court explained that "[u]nder both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel. [Citations.] The ultimate purpose of this right is to protect the defendant's fundamental right to a trial that is both fair in its conduct and reliable in its result. [Citations.] [¶] Construed in light of its purpose, the right entitles the defendant not to some bare assistance but rather to *effective* assistance. [Citations.] Specifically, it entitles him to 'the reasonably competent assistance of an attorney acting as his diligent conscientious advocate.' [Citations.]"

The high court in *Ledesma* further explained the showing necessary to reverse a conviction on this ground: " 'A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components.' [Citations.] 'First, the defendant must show that counsel's performance was deficient.' [Citations.] Specifically, he must establish that 'counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.] [¶] In determining whether counsel's performance was deficient, a court must in general exercise deferential scrutiny." (*Ledesma, supra*, 43 Cal.3d at p. 216.)

The heavy burden placed upon a defendant asserting ineffective assistance of counsel is based upon sound public policy. "The spectacle of a series of attorneys appointed at public expense whose sole job, or at least a major portion of whose job, is to claim the previous attorney was, or previous attorneys were, incompetent discredits the legal profession and judicial system, often with little benefit in protecting a defendant's legitimate interests." (*People v. Smith* (1993) 6 Cal.4th 684, 695 [25 Cal.Rptr.2d 122, 863 P.2d 192].)

Additionally, even if this burden is met, "a criminal defendant must also establish prejudice before he can obtain relief on an ineffective-assistance claim." (*Ledesma, supra*, 43 Cal.3d at p. 217.) Although prejudice is conclusively presumed in certain contexts, prejudice generally must be affirmatively proved. (*Ibid.*) " 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*Id.* at pp. 217–218.)

██ An ineffective assistance of counsel claim is properly raised in a habeas corpus proceeding. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267 [62 Cal.Rptr.2d 437, 933 P.2d 1134].) ██ Further, it is undisputed that counsel's failure to file a notice of appeal from the judgment constituted ineffective assistance of counsel. The question presented is whether that error was prejudicial; that is, is it more probable than not that if an appeal had been filed, we would have reversed the judgment? The answer to that question requires an analysis of the law regarding motions to dismiss and a consideration of the evidence developed at trial.

### B. *Sufficiency of Evidence at Time of Motion to Dismiss*

Section 701.1 provides that a minor's counsel may request, at the close of the People's case, that the court enter a judgment of dismissal:

"At the hearing, the court, on motion of the minor or on its own motion, shall order that the petition be dismissed and that the minor be discharged from any detention or restriction therefore ordered, after the presentation of evidence on behalf of the petitioner has been closed, if the court, upon weighing the evidence then before it, finds that the minor is not a person described by Section 601 or 602. If such a motion at the close of evidence offered by the petitioner is not granted, the minor may offer evidence without first having reserved that right."

Courts have held that section 701.1 is substantially similar to Penal Code section 1118[2] governing motions to acquit in criminal trials and that therefore the "rules and procedures applicable to [Penal Code] section 1118 . . . apply with equal force to juvenile proceedings." (*In re Man J.* (1983) 149 Cal.App.3d 475, 482 [197 Cal.Rptr. 20].)

Thus, the requirement in a criminal case that on a motion for acquittal the trial court is required "to weigh the evidence, evaluate the credibility of witnesses, and determine that the case against the defendant is 'proved beyond a reasonable doubt before [the defendant] is required to put on a defense' " applies equally well to motions to dismiss brought in juvenile proceedings. (*In re Andre G.* (1989) 210 Cal.App.3d 62, 66 [258 Cal.Rptr. 127].) We conclude that at the time Anthony J. brought his motion to dismiss

---

[2] Penal Code section 1118 provides: "In a case tried by the court without a jury, a jury having been waived, the court on motion of the defendant or on its own motion shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading after the evidence of the prosecution has been closed if the court, upon weighing the evidence then before it, finds the defendant not guilty of such offense or offenses. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

at the close of the People's case, insufficient evidence was presented to sustain the petition on count 2.

■ Penal Code section 496, subdivision (a) provides in part: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison . . . ." Consequently, to sustain the People's petition on the receiving stolen property count, the People must prove (1) the property was stolen; (2) the defendant knew it was stolen; and (3) the defendant had possession of it. (*People v. King* (2000) 81 Cal.App.4th 472, 476 [96 Cal.Rptr.2d 817]; *People v. Land* (1994) 30 Cal.App.4th 220, 223 [35 Cal.Rptr.2d 544] (*Land*); *People v. Kunkin* (1973) 9 Cal.3d 245, 249 [107 Cal.Rptr. 184, 507 P.2d 1392]; *People v. Price* (1991) 1 Cal.4th 324, 464 [3 Cal.Rptr.2d 106, 821 P.2d 610], superseded by statute on other grounds as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161–1165 [68 Cal.Rptr.2d 440].) ■ The requisite possession of the stolen property may be either actual or constructive, and need not be exclusive. In fact, physical possession is not required, as it is sufficient if the defendant acquires a measure of control or dominion over the stolen property. However, mere presence near the stolen property in and of itself is insufficient evidence of possession to sustain a conviction for receiving stolen property. (*Land, supra,* 30 Cal.App.4th at pp. 223–224.)

In *Land*, as here, the issue was "under what circumstances, a passenger in a stolen car, knowing the car is stolen, may be properly found to have possession or dominion and control over the stolen vehicle." (*Land, supra,* 30 Cal.App.4th at p. 225.) As the reviewing court in *Land* said, " '[d]ominion and control are essentials of possession, and they cannot be inferred from mere presence or access. Something more must be shown to support inferring of these elements. Of course, the necessary additional circumstances may, in some fact contexts, be rather slight. [Citations.] It is clear, however, that some additional fact is essential.' " (*Ibid.*) In *Land*, the reviewing court found substantial evidence that the defendant possessed the stolen vehicle, even though he was merely a passenger, in that he and the driver were friends; they drank and did drugs together; the defendant knew the car was stolen; the car was stolen near the defendant's residence and they drove it within an hour of the theft; they used the vehicle for their own benefit and enjoyment; the car was instrumental to their joint criminal enterprise that evening; and the defendant made no effort to disassociate himself from his friend or the stolen vehicle during the possession although he had ample opportunity. (*Id.* at p. 228.)

■ The facts as they existed at the close of the People's case did not comport with those in *Land,* and the People's case at most demonstrated mere presence by Anthony J. in the stolen vehicle. The only evidence presented at that time was that four young men got out of a car, they ran as a patrol car drove nearby, a set of keys was found near them when they were detained, and the driver of the vehicle was identified by a witness, but Anthony J. was not. There were no facts showing that Anthony J. and the driver were friends, that they had engaged in criminal activity together in the past, that he was a passenger shortly after the vehicle was stolen, or that Anthony J. and the driver jointly used the vehicle to commit crimes. Thus, the People's evidence did not demonstrate beyond a reasonable doubt that Anthony J. had possession of the vehicle, either actual or constructive. Accordingly, the court erred in denying Anthony J.'s motion to dismiss made at the close of the People's case, and the petition must be granted and a judgment of dismissal entered on count 2, unless we must also consider Anthony J.'s testimony following denial of the motion to dismiss, and that testimony supplies sufficient evidence to sustain the petition.

### C. *Waiver by Testifying?*

In *United States v. Foster* (D.C. Cir. 1986) 783 F.2d 1082, the circuit court of appeals held that a criminal defendant who, after a denial of a motion for judgment of acquittal at close of the prosecution's case, presents evidence that supplies sufficient evidence to sustain a conviction, waives his or her objection to the denial. (*Id.* at p. 1086; see also *United States v. Sherod* (D.C. Cir. 1992) 960 F.2d 1075, 1076.) In doing so, the court rejected the argument that "requiring the defendant to forgo presentation of his case if he wishes to preserve his objection to denial of his motion to acquit is requiring him to 'gamble on a prediction that the jury or appellate court will find [the government's] evidence insufficient.' " (*Foster, supra,* 783 F.2d at pp. 1083–1084.) Instead, the Circuit Court stated that the better rule was that if a defendant " 'presents the testimony of himself or of others and asks the jury to evaluate his credibility (and that of his witnesses) against the government's case, he cannot insulate himself from the risk that the evidence will be favorable to the government. Requiring the defendant to accept the consequences of his decision to challenge directly the government's case affirms the adversary process. [Citation.]' " (*Id.* at p. 1084.) The court also based its conclusion upon the proposition that "a defendant demonstrated to be guilty beyond a reasonable doubt on the basis of all the valid and admissible evidence will not be set free merely because, had an earlier erroneous ruling been made correctly, the trial would have ended before sufficient evidence to convict had been introduced." (*Id.* at pp. 1084–1085.) The majority of federal circuits, including the Ninth Circuit, follow this waiver rule. (*Id.* at p. 1085; *see United States v. Martinez* (9th Cir. 1975) 514 F.2d 334, 337.)

California courts have yet to specifically address the waiver issue. The only published decision in California discussing the issue is *People v. Valerio* (1970) 13 Cal.App.3d 912 [92 Cal.Rptr. 82]. In that case, after the People rested, the defendant made a motion to acquit, which he reserved for argument and decision until the close of all evidence, but which was deemed made at the close of the prosecution's case. Thereafter, the defendant testified on his own behalf, and his codefendant testified on her behalf. The motion to acquit was then denied at the close of the case. The question on appeal was whether, in reviewing the denial of the motion to acquit, the Court of Appeal was limited to the evidence admitted as of the close of the People's case, or could consider all the evidence admitted thereafter. (*Id.* at pp. 918–919.)

The Court of Appeal noted the federal rule that if "after the motion is denied, the defendant puts on evidence which supplies any deficiency in the prosecution's case, he may not complain on appeal of the erroneous denial of his motion." (*People v. Valerio, supra,* 13 Cal.App.3d at p. 920.) The Court of Appeal also noted criticism of the federal rule, and that analogous case law in California appeared "inconclusive and somewhat in conflict." (*Ibid.*) The *Valerio* court in the end concluded that it did not need to reach the issue because the evidence that came in after the motion to acquit that was helpful to the prosecution was the testimony of a codefendant, not the defendant, and because of that, he could not be said to have waived the right to raise the denial of his motion to acquit on appeal. (*Ibid.*)

■ We conclude that the federal waiver rule holding that where a defendant testifies after the denial of a motion to dismiss and that testimony supplies any deficiency in the prosecution's case, he may not complain on appeal of the erroneous denial of the motion is not applicable in California. We base this conclusion upon California Supreme Court cases holding that review of an unsuccessful motion for acquittal is limited to the evidence introduced at the time the motion was made, and the policies underlying that rule of law. (*People v. Trevino* (1985) 39 Cal.3d 667, 695 [217 Cal.Rptr. 652, 704 P.2d 719], overruled on other grounds in *People v. Johnson* (1989) 47 Cal.3d 1194 [255 Cal.Rptr. 569, 767 P.2d 1047]; *People v. Belton* (1979) 23 Cal.3d 516, 521 [153 Cal.Rptr. 195, 591 P.2d 485] (*Belton*).) In *Belton*, our high court described the importance of requiring the prosecution to prove a prima facie case before a defendant must decide whether to testify in his or her defense: "Two of the most basic premises of our criminal justice system—the presumption of innocence and the duty of the prosecution to prove guilt beyond a reasonable doubt—are embodied in section 1096 of the Penal Code: 'A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal . . . .' 'These significant words express a cardinal rule of Anglo-American criminal jurisprudence. The presumption, intended originally to ameliorate the severity of

the early English common law [citation], serves not to protect the guilty but to prevent conviction of the innocent. [Citations.] It has been described as a fundamental right and an essential element of due process of law. [Citation.] It is the capstone in the protective arch of a citizen's rights when accused of crime.' [Citation.] [¶] Implicit in these principles is the duty of the prosecution to prove each element of the crime charged. *'One of the greatest safeguards for the individual under our system of criminal justice is the requirement that the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense.'* [Citations.]" (*Belton, supra,* 23 Cal.3d at p. 520, italics added.)

In *Belton,* the high court was not concerned with the precise issue here, but whether a defendant must specify the basis for a motion to acquit in order for it to be a valid motion. The court rejected such a requirement, concluding that it would put defendants in an untenable position: "[T]o so construe this section would force a defendant to face the same kind of dilemma from which the Legislature sought to extricate defendants. In effect, a defendant would be forced to choose between: (1) specifying the defects in the prosecution's case, thereby affording the prosecutor an opportunity to seek to reopen the case in order to cure such defects; (2) making no motion and resting, thereby sacrificing his right to present a defense for fear that later evidence might cure the defects in the prosecution's case; or (3) making no motion, thereby waiving the right to challenge the prosecution's case-in-chief, and proceeding to present a defense. Forcing a defendant to elect among these alternatives would deny him the intended protection of the section. Further, to require a defendant to state specific grounds in support of the motion for acquittal would place the burden upon him to point out to the prosecutor, as well as to the court, the gaps in the prosecution's case. Such a requirement would come perilously close to compelling a defendant to aid in his own prosecution and would lessen the prosecutor's burden to prove each and every element of the case beyond a reasonable doubt." (*Belton, supra,* 23 Cal.3d at pp. 521–522, fn. omitted.)

In *People v. Clark* (1965) 62 Cal.2d 870, 881 [44 Cal.Rptr. 784, 402 P.2d 856], the California Supreme Court concluded that the People may not take advantage of evidence that a defendant submits solely because of a prior error by the court. There, the defendants moved for an advisory verdict under former Penal Code section 1118 after the close of the prosecution's case, and the defendants' subsequent testimony was disregarded as the "fruit" of the court's erroneous denial of that motion because the People's case was based upon inadmissible evidence: "If the trial judge had been cognizant, as we are now, that the only evidence against the defendants was improperly introduced, he would have been compelled to grant such motions. Being unaware of the law not yet announced, he denied the motions, and defendants were compelled to proceed with a defense under circumstances wherein they would

have otherwise rested. It was only after those combined errors that they took the stand and testified to matters which contained both the exculpatory and incriminatory inferences which also appeared in their previously introduced statements. That testimony was obviously the fruit of the errors, and may not be relied upon as curing the very errors which compelled it [citation]." (*People v. Clark, supra,* at p. 881.)

■ Based upon these authorities, we decline to follow the federal rule that a defendant who by testifying cures a deficiency in the prosecution's case waives the right to complain about an earlier erroneous denial of a motion to dismiss. Such a rule offends the most basic premises of our criminal justice system, the presumption of innocence and the duty of the prosecution to prove guilt beyond a reasonable doubt. It presents a defendant whose motion to dismiss has been erroneously denied with a Hobson's choice: resting and sacrificing the right to present a defense out of fear that his or her testimony may cure defects in the prosecution's case, or putting on such evidence and thereby possibly assisting the prosecution in proving its case. This choice in essence compels a defendant to aid in his own prosecution and lessens the prosecutor's burden to prove each and every element of the case beyond a reasonable doubt. It denies a defendant the protections of the statute governing motions to dismiss. It also violates the fundamental right and essential element of due process of law accorded a defendant that requires the People to prove a prima facie case before the defendant is required to present any evidence in his or her defense. To the extent that Anthony J.'s testimony cured any deficiencies in the People's case, he did not waive the right to contest the denial of his motion to dismiss on appeal.

### D. *Consideration of Anthony J.'s Testimony Would Not Change the Result*

■ We further conclude that even if we were required to consider Anthony J.'s testimony, insufficient evidence still exists as a matter of law to sustain the petition on count 2. Anthony J. testified that he was only a passenger in the back seat of the vehicle, he knew the driver only slightly, and he gave no testimony indicating that he was ever in possession of the vehicle, constructive or otherwise. The facts here do not support a finding, as in *Land, supra,* 30 Cal.App.4th 220, that Anthony J., as a passenger, had sufficient constructive possession of the vehicle to sustain a petition for receiving a stolen vehicle. In *Land,* the court found the passenger had constructive possession based upon the fact that he and the driver were friends; they drank and did drugs together; defendant knew the car was stolen; the car was stolen near defendant's residence and they drove it within an hour of the theft; they used the vehicle for their own benefit and enjoyment; the car was instrumental to their joint criminal enterprise that

evening; and defendant made no effort to disassociate himself from his friend or the stolen vehicle during the possession although he had ample opportunity. (*Id.* at p. 228.)

By contrast, Anthony J.'s testimony did not supply any such facts to support the possession element of count 2. It also does not matter that the court, in sustaining the petition as to count 2, rejected Anthony J.'s version of events. There still was no positive evidence introduced supplying the necessary elements to sustain the petition on count 2. Accordingly, even if we considered Anthony J.'s testimony, we would still conclude that the court erred in failing to dismiss count 2 and sustaining the People's petition.

## DISPOSITION

Let a writ of habeas corpus issue directing the respondent superior court to vacate the judgment and enter a judgment of dismissal on count 2. The appeal from the restitution order is denied as moot.

Huffman, Acting P. J., and McDonald, J., concurred.

A petition for a rehearing was denied April 27, 2004.