Filed 3/29/23  In re J.T. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | D080820 |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>J.T.,<br><br>    Defendant and Appellant. | (Super. Ct. No. J243738) |

APPEAL from order of the Superior Court of San Diego County, Robert J. Trentacosta, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Elisabeth R. Cannon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

At a contested adjudication hearing, the juvenile court found J.T. (a minor) guilty of possessing a concealable firearm (Pen. Code, § 29610,[1] count one); possessing a firearm in violation of a probation condition (§ 29815, count two); carrying a loaded and unregistered weapon concealed within a vehicle he directed or controlled (§ 25400, subds. (a)(1) & (c)(6), count three); carrying a concealed weapon in a vehicle (§ 25400, subd. (a)(3), count four); possessing live ammunition (§ 29650, count five); and receiving stolen property worth over $950 (§ 496, subd. (a), count six).  At the disposition hearing, the juvenile court committed J.T. to Urban Camp for 130 days.

J.T. appeals his conviction on all counts for lack of substantial evidence.  We conclude that substantial evidence supports the convictions on all counts except count three.

J.T. further contends that the juvenile court failed to (i) specify whether the wobbler counts were felonies or misdemeanors, as required by Welfare and Institutions Code section 702; (ii) specify his maximum term of confinement, as required by Welfare and Institutions Code section 726; and (iii) credit him for time spent in custody, as required by section 2900.5, subdivision (b) of the Penal Code.  The People properly concede the first two issues, and we agree that J.T.'s custody credits were erroneously omitted from the disposition order.

Accordingly, we affirm in part, reverse in part, and remand with directions.

---

[1]    Further statutory references are to the Penal Code unless otherwise stated.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Incident*

Around 7:30 a.m. on May 23, 2022, Jason H. left his parents' house in Mira Mesa, San Diego to go to work.  By then, his father had already left the house.  His mother left for work later around 8:20 a.m.  When Jason returned home around 5:15 p.m., he felt something was amiss.  The window screen in his bedroom was removed.  His parents' master bedroom was "ransacked."  The family discovered that $14,000 in cash was missing from the home, as well as designer purses worth about $30,000, a Nintendo Switch, a white computer tower, earrings, and two iPhone X's.

At approximately 11:55 a.m. that day, the police made a traffic stop on a white Hyundai Sonata (a four-door sedan) with rear bumper damage in a shopping center on Euclid Avenue in San Diego.  The car had an expired registration and was possibly connected with "some other crimes."  The police identified four occupants in the car—an adult driver, adult front passenger, and two rear passengers who were minors, including J.T.  The car was registered to the driver.  J.T. was sitting in the rear seat behind the passenger.  A detective could see clothing scattered inside of the vehicle and "a lot of stuff" stacked up in the passenger compartment.  Another detective stated there "wasn't a lot of room" inside the car.  Between J.T. and the other rear passenger was "large plastic box" of stuff.

Because the rear bumper damage on the Hyundai matched the description of another car reportedly involved in a series of burglaries under investigation, the detectives removed all the occupants from the vehicle and conducted a search.  They found a loaded Glock 30 handgun, a Nintendo Switch, and two cellphones in the pouch of the passenger seat directly in front of J.T.  A round of nine-millimeter ammunition was located in the glove

3

box.  And a second loaded handgun, a nine-millimeter Taurus, was found under the driver's seat.  After the guns were found, the detectives arrested the occupants of the car and conducted an inventory search of the car.

In the large plastic box on the rear passenger seat, the detectives found designer purses and family photos not depicting any of the car's occupants.  They also found checkbooks and identification cards not belonging to any of the car's occupants and a red bag.  A white computer tower and MacBook were found in the trunk.  A patdown of J.T. revealed he had $1,700 in cash on his person.

Later that evening, Jason and his parents went to the police station and identified items recovered from the Hyundai as their missing property, including the white computer tower, Nintendo Switch, purses, and other belongings.  They did not know any of the occupants in the Hyundai and did not give them permission to have any of their belongings.

B.    *The Juvenile Proceedings*

In May 2022, the San Diego County District Attorney's Office filed a wardship petition under Welfare and Institutions Code section 602, subdivision (a) charging J.T. with counts one to five.  The following month, the district attorney amended the petition to add count six.

At the adjudication hearing in July 2022, the court made the following findings.  J.T. was in the Hyundai which matched another vehicle reportedly involved in a series of residential burglaries.  He was found sitting in the back seat behind the front passenger.  J.T. and the occupant beside him "were essentially crammed into the back seat with a plastic tub full of stolen property between them."  J.T. was "essentially sitting with his hip and perhaps his arms literally in a mother load of stolen items."  "[I]n addition to the items that were stolen there was cash in a sum of about $14,000" stolen

4

from Jason's home. J.T. "was found to have $1,700 on his person." The photographs showed that the pouch contained a handgun, ski goggles that were bent toward J.T., and the stolen Nintendo Switch. In the court's view, one of the photographs showed "the butt of the handgun" "pretty clear[ly] given the tight fit of the pouch as well as the other items that are stuffed in there that—and the minor's proximity to those items and the fact that the minor would be—if he looks down at all, these things are going to be visible to him. [¶] It is, again, I think proven beyond a reasonable doubt that these items must have been known." The court then concluded there was no "reasonable explanation [J.T.] did not know of the presence of this handgun, which was in close proximity to his body." At the time of the incident, J.T. was on probation with the condition that he "must not possess a dangerous or deadly weapon" and "shall not knowingly have any firearm in his/her possession until attaining the age of 30." The juvenile court thus made true findings on all counts, and found that J.T. violated his probation by possessing the handgun.

At the disposition hearing, the juvenile court ordered J.T. committed to Urban Camp for 130 days.

DISCUSSION

I.

J.T. argues that the evidence is insufficient to support the juvenile court's true findings on all counts. We conclude that substantial evidence supports the true findings on all charges except count three.

A.    *Standard of Review*

Our review of the minor's substantial evidence claim is governed by the same standard applicable to adult criminal cases. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.) We must determine whether, viewing the evidence in

5

the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Ibid*.)  We presume in support of the judgment every fact that the trier of fact could reasonably have deduced from the evidence.  (*Ibid*.)  Substantial evidence is evidence that is reasonable, credible, and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Brooks* (2017) 3 Cal.5th 1, 57.)  Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.  (*Ibid*.)

Our role on appeal is a limited one.  If the circumstances reasonably justify the trier of fact's findings, our opinion that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment.  (*People v. Medina* (2009) 46 Cal.4th 913, 924, fn. 2.)

B.      *Analysis of Counts One, Two, Four, Five, and Six*

As to counts one, two, four, five, and six, J.T. contends that the evidence is insufficient to establish his possession of the firearm, ammunition, or stolen property.  He maintains that the evidence, at most, merely demonstrates his physical proximity to them.  We disagree.

Sections 29610, subdivision (a), and 29650 (counts one and five) prohibit a minor from possessing a handgun and live ammunition, respectively.  Section 29815, subdivision (a), (count two) criminalizes the possession of firearm by any person restricted from doing so as a condition of probation.  Section 25400, subdivision (a)(3), (count four) makes it a crime to carry a concealed firearm in a vehicle.  Section 496 (count six) prohibits a person from knowingly possess stolen property.  (§ 496; *In re Anthony J.* (2004) 117 Cal.App.4th 718, 728 (*Anthony J.*).)

6

Possession of a weapon or stolen property may be actual or constructive. (*People v. Peña* (1999) 74 Cal.App.4th 1078, 1083 (*Peña*); *Anthony J.*, *supra*, 117 Cal.App.4th at p. 728.) "A defendant has actual possession when the weapon [or stolen property] is in his immediate possession or control. He has constructive possession when the weapon [or stolen property], while not in his actual possession, is nonetheless under his dominion and control, either directly or through others." (*Peña*, at pp. 1083–1084; see *Anthony J.*, at p. 728.) "Implicit in the crime of possession of a firearm [and stolen property] is that a person is aware both that the item[s] [are] in his or her possession and that it is a firearm" and the property is stolen. (*People v. Clark* (2021) 62 Cal.App.5th 939, 958; *People v. Myles* (1975) 50 Cal.App.3d 423, 428 (*Myles*).) Possession may be shared with others and proved circumstantially. (*People v. Neese* (1969) 272 Cal.App.2d 235, 245.)

Mere proximity to a weapon or stolen property, standing alone, is not sufficient evidence of possession. (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417 (*Sifuentes*); *Anthony J.*, *supra*, 117 Cal.App.4th at p. 728.) However, "the necessary additional circumstances may, in some fact contexts, be rather *slight*." (*People v. Land* (1994) 30 Cal.App.4th 220, 225, italics added.) Here, the evidence establishes more than mere proximity.

The burglary at Jason's home in Mira Mesa occurred sometime within three and a half hours immediately before the Hyundai was stopped in another San Diego neighborhood because it matched the description of a vehicle used in a series of burglaries. J.T. was in the car filled with stolen items and an unusual amount cash ($1,700) on his person consistent with the items and cash that were reported stolen at Jason's home. Based on the photograph, the butt of the loaded handgun in the pouch was pointing

7

outward toward J.T. along with the ski goggles, which were partially sticking out from the pouch and bent toward J.T. These items (and others) were visible to and immediately accessible by J.T., who was sitting right behind the pouch. (See *People v. Miranda* (2011) 192 Cal.App.4th 398, 410 ["Possession may be imputed when the contraband is found in a place which is *immediately accessible* to the joint dominion and control of the accused and another" (italics added)].) The $1,700 cash on J.T.'s person further supported a reasonable inference that he possessed or jointly possessed the items and cash taken in the burglary of Jason's home, including the stolen Nintendo Switch stuffed into the seat pocket directly in front of him along with the firearm.

Viewing the evidence in its totality, the juvenile court could reasonably infer that J.T. had dominion and control over the loaded handgun and stolen property. (See, e.g., *People v. Williams* (1971) 5 Cal.3d 211, 214 [finding evidence sufficient to establish constructive possession of narcotics because bags of tablets were found beneath the driver's seat and a tablet was found on the floor in front of the seat occupied by the defendant].) Construing the evidence in light most favorable to the judgment, we cannot say that there was no reasonable basis to support the juvenile court's findings as to counts one, two, four, five, and six. (See *People v. Penunuri* (2018) 5 Cal.5th 126, 142 [" 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' "].)

To support his position, J.T. relies on four cases in which the appellate courts found the evidence insufficient to establish possession. "When we decide issues of sufficiency of evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts." (*People*

8

*v. Thomas* (1992) 2 Cal.4th 489, 516 (*Thomas*).)  The facts of the cases cited by J.T. bear little resemblance to this case.  (See *Sifuentes*, *supra*, 195 Cal.App.4th at pp. 1414, 1418–1419 [finding insufficient evidence that defendant possessed gun found under mattress near fellow gang member and rejecting unsupported theory that "all gang members had the right to control communal gang guns"]; *In re I.A.* (2020) 48 Cal.App.5th 767, 778–779 [holding that Facebook messages and photos did not establish defendant's possession of gun found in car he did not occupy]; *Myles*, *supra*, 50 Cal.App.3d at pp. 428–429 [finding insufficient evidence that passenger of vehicle possessed stolen televisions found in truck]; *People v. Zyduck* (1969) 270 Cal.App.2d 334, 335–336 [finding insufficient evidence that front passenger of vehicle possessed stolen chainsaw located in rear seat].)

J.T. also cites to several cases in which there was sufficient evidence to establish possession of a gun or stolen property.  (See *People v. Bay* (2019) 40 Cal.App.5th 126, 132 [finding sufficient evidence the defendant possessed the pistol and ammunition in a backpack not proven to be his]; *People v. Harrison* (1969) 1 Cal.App.3d 115, 118–119 [finding sufficient evidence the defendant possessed firearm, even though another person testified he owned it, because the defendant "failed to stop immediately after seeing the red light, though the curbing was free of parked cars," and expressed "disconsolate disgust" when the police officer found the gun]; *People v. Peters* (1982) 128 Cal.App.3d 75, 82–83 [finding sufficient evidence the defendant received a checkbook belonging to another person because it was located in his car behind the driver's sun visor].)  These cases finding *sufficient* evidence do not undermine our conclusion that the evidence of actual or constructive possession is likewise sufficient on the record presented here.

C.    *Analysis of Count Three*

9

J.T. next argues that there is insufficient evidence the Hyundai was under his control or direction to support the count three conviction for violating section 25400, subdivision (a)(1). We agree.

"Section 25400 [, subdivision] (a)(1) makes it a crime for one to carry 'concealed within any vehicle that is under the person's control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.' Conviction under the statute requires proof that the 'defendant carried within a vehicle a firearm capable of being concealed on the person,' the 'defendant knew the firearm was in the vehicle,' the 'firearm was substantially concealed,' and the 'vehicle was under the defendant's control or direction.'" (*People v. Aguilar* (2016) 245 Cal.App.4th 1010, 1017.)

As J.T. maintains, the juvenile court did not explain how it concluded that he controlled or directed the Hyundai. At the time of the traffic stop, the Hyundai was registered to and operated by the adult driver—*not* J.T. who was simply a rear passenger. (See *People v. Davis* (1958) 157 Cal.App.2d 33, 36 [concluding the car was under the defendant's control and direction because he owned it].) There is no evidence that J.T. himself ever drove the car or exercised any control or direction over the adult driver's operation of the car.

The People nonetheless contend that under *People v. Gant* (1968) 264 Cal.App.2d 420, 424, it was reasonable for the juvenile court to infer J.T. had joint control or direction of the vehicle with the driver because of "their joint enterprise of burgling a home." We are unconvinced. In that case, the two defendants were seated together as the driver and front passenger in a *stolen* car with recently stolen property. (*Id.* at pp. 424–425.) Based on the totality of circumstances, the *Gant* court concluded it was reasonable to infer the two defendants had joint possession of the stolen car. (*Ibid.*) By contrast, J.T.

10

was a minor sitting in the rear seat of a car that was not stolen and was registered to and operated by the adult driver. Even assuming that J.T. and the driver jointly participated in the burglary (which J.T. was not charged with), we see no evidentiary support for a finding that they had joint control and direction over the adult driver's car.

## II.

The parties agree, as do we, that the juvenile court failed to expressly declare during the adjudication hearing whether wobbler counts one, two, three, and six were misdemeanors or felonies, as required by Welfare and Institutions Code section 702.[2] "The remedy for a juvenile court's failure to designate felony or misdemeanor treatment of an offense is a remand for the purpose of making that determination." (*In re Jacob M.* (1987) 195 Cal.App.3d 58, 65.)

We also agree with the parties that the juvenile court failed to specify a maximum period of confinement as required by Welfare and Institutions Code section 726.[3] Both the disposition order and the transcript of the disposition hearing are silent on J.T.'s maximum period of confinement.

---

[2] Section 702 of the Welfare and Institutions Code, in relevant part, provides: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court *shall* declare the offense to be a misdemeanor or felony." (Italics added.) (Welf. & Inst. Code, § 702.)

[3] Under section 726, subdivision (d)(1), when a court orders a removal of a minor from his or her parents' or guardians' custody under Welfare and Institutions Code section 602, "the order *shall* specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (Welf. & Inst. Code, § 726, subd. (d)(1), italics added.)

11

Finally, J.T. contends the disposition order fails to credit him for his time in custody. We agree. The juvenile court has a duty to credit J.T. for his time in custody pursuant to section 2900.5, subdivision (d).[4]

_____

[4] Section 2900.5, subdivision (d), states: "It is the duty of the court imposing the sentence to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited pursuant to this section. The total number of days to be credited shall be contained in the abstract of judgment . . . ." (§ 2900.5, subd. (d).)

## DISPOSITION

The adjudication order is reversed as to count three and otherwise affirmed. The case is remanded with directions for the juvenile court to (i) state on the record its determination of the felony or misdemeanor status of counts one, two, and six; (ii) specify on the record the maximum custody term; (iii) recalculate the appropriate custody credits; and (iv) amend the disposition order accordingly. In all other respects, the judgment is affirmed.

BUCHANAN, J.

WE CONCUR:

IRION, Acting P. J.

DATO, J.

13