Filed 3/7/24  P. v. Vang CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>PAO CHOUA VANG,<br><br>　　　Defendant and Appellant. | A165923<br><br>(San Mateo County<br>Super. Ct. No.<br>21NF009932B) |

A jury convicted defendant Pao Choua Vang of receiving stolen property in excess of $950 in value (Pen. Code, § 496, subd. (a))[1] and misdemeanor possession of burglary tools (§ 466).  On appeal, defendant challenges the sufficiency of the evidence to support his receiving stolen property conviction asserting there was insufficient evidence that (a) he "possessed" the stolen property and (b) the property exceeded $950 in value.  We disagree with defendant's first assertion but find merit in his second.  Accordingly, we remand for the trial court to reduce defendant's section 496, subdivision (a) conviction from a felony to a misdemeanor and for resentencing.  In all other respects, we affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

1

Pacifica Police Officer Eric Martinez was on patrol in a residential neighborhood around 4:40 a.m., when he noticed a Lexus " 'slow rolling' " or "driving very slowly." The car had a "clear, plastic cover on the rear license plate," a Vehicle Code violation. Martinez initiated a traffic stop. As he approached the car, Martinez observed only the two front passengers, and he asked them to exit the car.

While Officer Martinez was speaking to them, Pacifica Police Corporal Brandon Smith arrived. After looking into the Lexus, Smith "observed catalytic converters in the backseat of the vehicle" along with a third person, defendant. Defendant was crouched down, as if he was hiding. Smith also saw defendant "holding what appeared to be several tools and/or objects in his hand."

Corporal Smith alerted Officer Martinez to defendant's presence, and Martinez then saw defendant sitting on the back seat with two catalytic converters on his lap. Next to him on the seat were a pair of wire cutters, a cell phone, and a floor jack. The two catalytic converters on defendant's lap were of differing size. One "was so long that it couldn't fit on his whole lap," and was approximately "four to five feet" in length and weighed "15, 20 pounds," while the second one was about "half the size of the other one" or about "two to three feet" in length and weighed about "five to ten pounds." The floor jack was "approximately two to three feet" in length and weighed approximately 60 to 70 pounds.

Corporal Smith, in turn, told defendant "to wake up, and then I had him step out of the vehicle so I could detain him in handcuffs."

A subsequent search of the trunk revealed six additional catalytic converters and various power tools, including an impact wrench, pipe cutters,

wire cutters, a wrench extender, and a flashlight found throughout the vehicle. At trial, Corporal Smith explained a "pneumatic or an impact wrench" is used to "unbolt the catalytic converter" from a vehicle; the "jack is used to obviously jack up the car"; and wire cutters are used "to snip the wires on the catalytic converters." The catalytic converters, themselves, displayed evidence of theft, indicated by their uneven cut marks and severed wires. The officers detained all three individuals.

The San Mateo County District Attorney filed an amended information charging defendant with one count of felony receiving stolen property in excess of $950 (§ 496, subd. (a)) and misdemeanor counts of possession of burglary tools (§ 466), possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)), and possession of drug paraphernalia (*id*., § 11364). The information further alleged defendant had a prior strike conviction (§§ 667, subd. (d), 1170.12, subd. (b)).

Officer Martinez, who was aware of a recent increase in catalytic converter thefts in the area, testified at trial that such thefts had become commonplace, often going unreported by victims. He further testified catalytic converters were "worth a lot on the black market or at scrap yards." Specifically, he stated the "range of return" would be anywhere from $300 to $1,000 "depending on the condition of the catalytic converter, the type of vehicle that the catalytic converter was stolen from, and the year."

Corporal Smith similarly testified there had "been a large increase in catalytic converter thefts due, in part, because Toyota Priuses are a popular vehicle, and they're easily stolen from Toyota Priuses and other vehicles. And the inside of the catalytic converter, the precious metal, specifically platinum, are very valuable." Smith estimated "80 to 90 percent of the catalytic converter theft reports that I take are specifically from Toyotas."

A Toyota service director testified the "two main elements" in catalytic converters, which make them "so valuable," are platinum and rhodium. Converters range in size, depending on the model of the vehicle, and some vehicles, for example some trucks, might have two converters. Toyota catalytic converters are identifiable by the Toyota emblem but lack specific model information or serial numbers. He noted the converters had been improperly removed, as typically, the entire exhaust system is unbolted and removed intact.

The service director could not identify two of the eight stolen converters, but he identified six as having been stolen from 2004 to 2009 Toyota Priuses. When asked if he had "noticed a trend with a particular type of make that gets hit more frequently than others?," the director stated, "From what I'm hearing in the industry right now, the Toyota Priuses are being hit." The prosecutor then asked, "And is that because there's more platinum in those converters?" The director responded, "Possibly, yeah, the way it's—yes." The director stated a replacement converter for a Toyota Prius was $2,500, which would be for a factory-issued part. He did not examine the converters at issue to see the condition of the "platinum and other metals inside" of them. Nor did he have "any training and experience on what" the converters at issue "may have been sold for from a junkyard or from the black market," or any knowledge as to "how one would go about offloading" the platinum or rhodium.

There were no witnesses for the defense.

The jury convicted defendant of receiving stolen property in excess of $950 and misdemeanor possession of burglary tools. It found defendant not guilty of the misdemeanor charges of possession of a controlled substance and drug paraphernalia.

4

## DISCUSSION

Section 496, subdivision (a) provides, in pertinent part, "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in county jail. . . ."

"Thus, to sustain a conviction for receiving stolen property, the prosecution must prove (1) the property was stolen; (2) the defendant knew the property was stolen; and (3) the defendant had possession of the stolen property." (*People v. Land* (1994) 30 Cal.App.4th 220, 223 (*Land*).) Additionally, "if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor. . . ." (§ 496, subd. (a); *People v. Orozco* (2020) 9 Cal.5th 111, 118 (*Orozco*).)

"Upon a challenge to the sufficiency of evidence for a jury finding, ' " ' "we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " ' " (*People v. Rivera* (2019) 7 Cal.5th 306, 323.)

*"Possession" of Stolen Property*

The possession required for receiving stolen property "may be actual or constructive and need not be exclusive." (*Land, supra*, 30 Cal.App.4th at p. 223.) Physical possession is not a requirement; "It is sufficient if the defendant acquires a measure of control or dominion over the stolen property." (*Id.* at p. 224.)

5

Dominion and control " ' "cannot be inferred from mere presence or access.  Something more must be shown to support inferring of these elements.  Of course, the necessary additional circumstances may, in some fact contexts, be rather slight.  [Citations.]  It is clear, however, that some additional fact is essential." ' " (*In re Anthony J.* (2004) 117 Cal.App.4th 718, 728; *Land, supra*, 30 Cal.App.4th at p. 225.)

There was abundant evidence here that defendant was found in the midst of stolen catalytic converters and tools of the catalytic converter theft trade.  He had two catalytic converters on his lap, a floor jack was at his feet, and a pair of wire cutters were beside him.  There were six additional catalytic converters in the trunk, along with additional tools of the trade.  In addition, all eight catalytic converters showed the signs of having been stolen, including cut marks and exposed wires.  And defendant, himself, was not merely sitting on the rear seat.  Rather, he was crouched down and appeared to be trying to hide from the officers' view.  In short, the evidence was more than sufficient to prove defendant physically possessed two, and constructively possessed six, of the stolen converters.

Defendant's reliance on *People v. Myles* (1975) 50 Cal.App.3d 423 (*Myles*) and *People v. Zyduck* (1969) 270 Cal.App.2d 334 (*Zyduck*) is misplaced.

In *Myles,* an afternoon burglary had been reported in which two televisions were stolen.  An officer subsequently observed a stopped car and watched the driver/owner and the defendant/passenger get out and walk around to the trunk.  Along with several other people, they looked into the trunk.  The officer did not recall whether the driver or the defendant opened and closed the trunk, but he could see two televisions in it.  The owner then returned to the driver's side, and the defendant returned to the passenger

side, and the car drove away.  The officer subsequently stopped the car, examined the televisions in the trunk, then " 'questioned the defendant and the other party in the vehicle, as to the ownership, brand names, serial numbers of the televisions. . . .  They couldn't give me the brand names or ownership of the televisions.' " (*Myles, supra,* 50 Cal.App.3d at pp. 426–427.) At trial, the defendant denied committing the burglary and testified he did not know the television sets in the car were stolen.  He claimed the driver had come by his house earlier that day and tried, unsuccessfully, to sell him or his girlfriend a television.  When the police stopped the car and asked him if it was his television, he told them no.  (*Id.* at p. 427.)  In short, as the Court of Appeal ruled, *Myles* was a classic case of the defendant merely being in tangential proximity of the stolen property.  (*Id.* at p. 429.)  As we have recited, that was not the case here.

*Myles* cited to *Zyduck*, on which defendant also relies.  In that case, a chain saw was stolen and found the following day on the rear seat of a car stopped some 22 miles away.  The defendant was a passenger in the front seat.  The prosecution did not present any additional evidence and argued on appeal that a "defendant's mere presence in a car owned and driven by another, in which the stolen property is readily visible, is enough to show possession." (*Zyduck, supra,* 270 Cal.App.2d at p. 335.)  The Court of Appeal disagreed, pointing out "Opportunity of access to a place where contraband is stored is not enough, by itself, to establish possession. . . ." (*Id.* at p. 336.) "Dominion and control are essentials of possession, and they cannot be inferred from mere presence or access" alone; "some additional fact is essential." (*Ibid.*)  Given the paucity of the prosecution's case, there was no evidence of any such fact.  (*Ibid.*)  Indeed, the appellate court observed that given the importance of the logging industry in the area, "the mere presence

7

of a chain saw in an automobile can hardly indicate to a mere guest or hitchhiker that it is stolen." (*Ibid.*)  Again, the evidence here is significantly different.

*Value of Stolen Property*

In order to prove felony possession of stolen property, the prosecution must prove the stolen property exceeds $950 in value.  Otherwise, the crime is punishable as a misdemeanor.  (*Orozco, supra*, 9 Cal.5th at p. 118.)

The value of stolen property is determined by its " 'reasonable fair market value.' " (*People v. Romanowski* (2017) 2 Cal.5th 903, 914.)  And usually, " 'fair market value' means the highest price obtainable in the market place rather than the lowest price or the average price." (*People v. Pena* (1977) 68 Cal.App.3d 100, 104; CALCRIM No. 1801 ["Fair market value is the highest price the property would reasonably have been sold for in the open market at the time of, and in the general location of, the theft" (italics omitted)].)  Also, the value of each stolen item generally must be established.  In other words, the $950 threshold usually cannot be reached by aggregating the value of items stolen from different locations and owners.[2]  (See generally *People v. Brown* (2019) 32 Cal.App.5th 726, 732–734.)  When there is no legal market for the stolen property in question, courts may consider its "illicit sale" or black market value.  (*Romanowski*, at p. 917 [value of stolen access card information may be determined based on its "illicit sale" value].) As we have recited, the prosecution's evidence as to the "market value" of the stolen catalytic converters was as follows: There had been an increase in catalytic converter thefts, given the prices scrap yards were paying for their precious metal content.  Officer Martinez testified the "range of return" on a

---

[2]  Thus, the Attorney General makes no argument the felony threshold is met here by aggregating the value of the eight catalytic converters.

stolen converter was anywhere from $300 to $1,000 "depending on the condition of the catalytic converter, the type of vehicle that the catalytic converter was stolen from, and the year." Corporal Smith testified Toyota Prius models were particularly at risk because "the precious metal[s], specifically platinum, are very valuable." He further estimated "80 to 90 percent of the catalytic converter theft reports that I take are specifically from Toyotas." The Toyota service director testified at least six of the stolen catalytic converters came from 2004 to 2009 Toyotas, and that a replacement converter cost $2,500.

There was no evidence as to the "illicit sale" value of any of the catalytic converters *at issue*. Indeed, the Attorney General concedes in a footnote "the record does not contain evidence about the resell value for used catalytic converters for reuse," but argues "the jury could logically infer that the value of converters sold for this purpose is somewhere between the cost for a new factory part" (approximately $2,500) "and the scrap value of the converter" (approximately $300 to $1,000). The Attorney General cites no case remotely suggesting evidence of such a speculatively large range constitutes substantial evidence of the "illicit sale" value of an item of stolen property. While " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence[,]' . . . '[a] reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork; a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities without evidence.' [Citation.] ' " 'By definition, "substantial evidence" requires *evidence* not mere speculation.' " ' " (*People v. Grant* (2020) 57 Cal.App.5th 323, 330.)

Almost in passing, the Attorney General comments replacement cost is sometimes an "appropriate metric to measure the value of stolen goods," citing to *People v. Renfro* (1967) 250 Cal.App.2d 921, 924, wherein the court stated "where . . . the property has a unique or restricted use and an extremely limited market, the actual or replacement cost to the one from whom it was stolen is its fair market value." In *Renfro*, the defendant was convicted of grand theft of telephone wire used only by telephone companies, purchased from one of the few manufacturers of such cables, and made to particular specifications for the company's use. (*Id.* at pp. 922, 924–925.) The Court of Appeal affirmed the judgment of grand theft, concluding in such circumstances, where the stolen property has a "unique or restricted use and an extremely limited market, the actual or replacement cost to the one from whom it was stolen is its fair market value. Otherwise, valuable property rights in certain kinds of property vitally needed in industry would be seriously jeopardized by the mere fact that once stolen the only remaining use for such property, and hence the only market therefor, is as 'salvage.' " (*Id.* at p. 924.) There was no evidence here that catalytic converters are considered "unique" or are acquired and sold on an "extremely limited" market.

We therefore conclude the evidence was not sufficient to support defendant's conviction of felony receipt of stolen property and the case must be remanded for resentencing as a misdemeanor.

## DISPOSITION

The matter is remanded to the trial court, which shall reduce defendant's section 496, subdivision (a) conviction from a felony to a misdemeanor and resentence him accordingly. In all other respects, the judgment is affirmed.

10

 

 

_____
Banke, Acting P. J.

We concur:


_____
Langhorne Wilson, J.


_____
Castro, J.*


*Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


A165923, People v. Vang